**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

FILED by _____ D.C.
INTAKE
APR 1 3 2001
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

**Case No. 00-3397-CIV-HIGHSMITH**

**Magistrate Judge Garber**

| | |
|---|---|
| EDDIE ROLANDO PINTO LEMUS, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| HAMILTON BANK, N.A., a National | ) |
| Banking Association. | ) |
| | ) |
| | ) |
| Defendant. | ) |

## MOTION FOR PROTECTIVE ORDER

Defendant. Hamilton Bank, N.A. ("Hamilton Bank"), pursuant to Fed.R.Civ.P. 26(c)
respectfully moves this Court for issuance of a protective order directed at plaintiff's first set of
interrogatories and first request for production of documents, and states:



GREENBERG TRAURIG, P.A.
1221 BRICKELL AVENUE MIAMI, FLORIDA 33131
305-579-0500 FAX 305-579-0717 www.gtlaw.com
MIAMI NEW YORK WASHINGTON, D.C. ATLANTA PHILADELPHIA TYSONS CORNER CHICAGO BOSTON PHOENIX WILMINGTON LOS ANGELES DENVER
SÃO PAULO FORT LAUDERDALE BOCA RATON WEST PALM BEACH ORLANDO TALLAHASSEE

## Preliminary Statement

On November 6, 2000, plaintiff filed and served an amended complaint that avers nine

counts premised on conspiracy, conversion, unjust enrichment, money had and received, breach of

fiduciary duty, constructive trust, breach of contract, negligent retention and supervision, and civil

theft. The amended complaint also asserts a demand for a trial by jury.

On December 4, 2000, Hamilton Bank filed and served a motion to dismiss without prejudice

to refiling the action in Guatemala on the ground of *forum non conveniens*. Without engaging in a

factual recitation of the somewhat exhaustive analysis underlying that motion and attendant

memorandum, the basis for dismissal, in part, was bottomed on the facts alleged in the very amended

complaint:

> (i)      the amended complaint identified at least
> eighteen (18) material witnesses residing either in Guatemala primarily
> or Panama.[1]
> (ii)     Guatemala is referenced as the situs of material
> facts underlying the factual allegations of the amended complaint at
> least twenty-one (21) times.[2]
> (iii)    Plaintiff is a *resident* and *citizen* of Guatemala
> who alleges to have served as a "middle man" in Guatemala.
> (iv)     Florida has no public interest in the adjudication
> of this claim.  To the contrary, Guatemala has substantial and
> measurable interest in having justice administered in that country as
> the facts alleged arise from acts and omissions concerning
> Guatemala's principal industry (the cultivation of coffee for
> commercial export) and purportedly affects Guatemalan coffee
> growers and Guatemalan exporters.
> (v)      this case is a transparent effort to file anew the
> virtually identical action that plaintiff was unsuccessful in prosecuting
> in Florida courts. In fact, on October 6, 1998, plaintiff filed an action

---

[1]      *See* Amended Complaint, ¶¶5, 6, 14, 15, 16, 21, 23, 24, 25, 26, 42, and 55.

[2]      *See* Amended Complaint, ¶27, 28, 29, 30, 33, 34, 37, 38, 39, 40, 42, 43, 44, 47, 48, 52, 53, 54, 55, 56, and 58.

2

GREENBERG TRAURIG, P.A.

1221 BRICKELL AVENUE  MIAMI, FLORIDA 33131

305-579-0500  FAX 305-579-0717  www.gtlaw.com

MIAMI  NEW YORK  WASHINGTON, D.C.  ATLANTA  PHILADELPHIA  TYSONS CORNER  CHICAGO  BOSTON  PHOENIX  WILMINGTON  LOS ANGELES  DENVER
SÃO PAULO  FORT LAUDERDALE  BOCA RATON  WEST PALM BEACH  ORLANDO  TALLAHASSEE

for conversion, fraud, and replevin against Messrs. Urcuyo and Berger, and Proagsa, Ltd.[3]  In the matter styled *Pinto Lemus v. Urcuyo Abarca, et al.*, Miami-Dade County Case No. 98-21758-CA-05[4]  After copious and comprehensive briefing on the applicable jurisdictional defenses, the Florida state court dismissed the case for lack of jurisdiction on October 21, 1999.  Although plaintiff initially appealed this decision, the appeal was voluntarily dismissed on December 6, 1999.[5]

(vi)    Finally, Guatemala is not only an adequate alternate forum, but a superior one.  Remarkably, plaintiff himself on multiple occasions sought redress and relief in Guatemalan courts.  These very actions highlight and underscore plaintiff's familiarity with and access to Guatemalan judicial tribunals.  Indeed, the record before this Court is bereft of any factual allegation or evidence suggesting, let alone establishing, *any* reason why this particular plaintiff cannot avail itself of the benefits of prosecuting its alleged Guatemalan claims in Guatemala.

On Thursday, January 11, 2001, this Court held a hearing on Hamilton Bank's motion to

dismiss based on *forum non conveniens*.  To date no ruling has issued.

On March 16, 2001, plaintiff served by U.S. mail plaintiff's first set of interrogatories

pursuant to Fed.R.Civ.P. 33 and S.D.Fla. L.R. 26.1.G and first request for production of documents

purportedly under Fed.R.Civ.P. 34.  The response to this discovery is due on Wednesday, April 18,

2001.  For the reasons more specifically set forth below, this Court should stay any obligation to

---

[3]      Proagsa was a currency exchange company that operated exclusively in <u>Central America</u> for the single purpose of exchanging foreign currencies (Urcuyo Aff., ¶14.)

[4]      *See* certified copy of the Complaint filed by plaintiff, Edie Rolando Pinto Lemus in the referenced case.

[5]      *See* certified copy of Notice of Appeal of a Non-Final Order filed by Edie Rolando Pinto Lemus in the referenced case   *See also* certified copy of the appellate court's order dismissing plaintiff's non-final appeal in that matter.

3

respond to this discovery effort, and all discovery[6], or alternatively, provide Hamilton Bank with a thirty (30) day enlargement of time, up to and including May 18, 2001, in which to respond.

## Memorandum

Plaintiff's most recent discovery effort is beyond the scope of Fed.R.Civ.P. 26, but of equal importance for purposes of this motion, far from ripe. It is yet to be determined whether this case shall proceed before this Court. Because of the pending motion to dismiss, the pleadings are not closed and, therefore, Hamilton Bank has not asserted any defenses or affirmative defenses. It would constitute a vast waste of resources to engage in an attempt to respond to the 174 document categories (excluding multiple subparts: *See e.g.* request nos. 148, 163, and 167) at a procedural juncture when it is uncertain whether prosecution of the action before this Court is even viable.[7] Moreover, should the Court decide that the proper administration of justice compels dismissal of the action, plaintiff in that scenario should not be allowed to secure the benefits of discovery pursuant to the Federal Rules of Procedure only then to use the application of these rules in a foreign jurisdiction where venue is proper.

Conversely, if this Court retains jurisdiction over this cause, Hamilton Bank would then file and serve an answer that shall deny virtually all material allegations asserted in the amended complaint, raise defenses and affirmative defenses. This pleading may precipitate yet additional discovery or otherwise moot many of the document categories and information elicited in the outstanding request for production of documents and interrogatories. Without a responsive pleading,

---

[6]     Hamilton Bank does not seek to secure a tactical advantage by filing this motion and, therefore, it too consents to an omnibus stay of discovery that also would preclude it from propounding such papers.

    Copies of plaintiff's interrogatories and request for production are here attached as Composite Appendix 1.

4

the scope of discovery is ill-defined, if articulated at all.  Consequently, plaintiff's discovery at this procedural juncture is but a burdensome "fishing expedition" that may be entirely or partially moot depending upon this Court's ruling on the motion to dismiss, and Hamilton Bank's subsequent filing of a motion to dismiss the various non-sustainable claims or a responsive pleading.

A review of the amended complaint suggests that a number of the counts averred are susceptible to dismissal for failure to state a claim for which relief can be granted.  By allowing plaintiff to proceed now with discovery would inevitably and invariably broaden illicitly the scope of discovery and thus provide plaintiff with documentation and other information to which it would not otherwise be privy.  Put simply, whether pursuant to a Fed.R.Civ.P. 12(b)(6) motion to dismiss, or a responsive pleading (Fed.R.Civ.P. 5 and 7), allowing plaintiff to proceed with discovery would provide them with an undue tactical advantage in the litigation and cause the parties to expend significant resources in attorney's fees, costs, corporate allocation of staff to retrieve responsive documents, and other logistical expenses that would otherwise be in whole or in part obviated.[8]

The jurisprudence is of a single voice in holding that a court is vested with discretion to stay discovery pending disposition of a case dispositive motion, such as here, including where the motion is bottomed on *forum non conveniens. See e.g. Chudsama v. Mazda Motor Corporation*, 123 Fed.3d 1353, 1367 (11th Cir. 1997):

> If the district court dismisses a non-meritorious claim before discovery has begun, unnecessary costs to the litigants and to the court system can be avoided.  Conversely, delaying ruling on a motion to dismiss such a claim until after the parties complete discovery

---

[8]     *See generally Maurice Rosenberg, Federal Rules of Civil Procedure in Action: Assessing their Impact*, 137 U.Pa.L.Rev. 2197, 2204-05 (1989) (discussing costs and noting that in survey of 1,000 judges, "abusive discovery was rated among the reasons for the high cost of litigation").

5

> encourages abusive discovery and, if the court ultimately dismisses the
> claim, imposes unnecessary costs, for these reasons, any legally
> unsupported claim that would unduly enlarge the scope of discovery
> should be eliminated before the discovery stage, if possible. Allowing
> a case to proceed through the pretrial processes with an invalid claim
> that increases the costs of the case does nothing but waste the
> resources of the litigants and the action before the court, delay
> resolution of disputes between other litigants, squander scarce judicial
> resources, and damage the integrity and the public's perception of the
> federal judicial system.

*See also Panola Landbuyers Association v. Shuman*, 762 F.2d 1550, 1560 (11th Cir. 1985)

("[M]agistrate has broad discretion to stay discovery pending decision on a dispositive motion")

[citations omitted]; *Petrus v. Bowen*, 883 F.2d 581, 582 (5th Cir. 1987) ("a trial court has broad

discretion and inherent power to stay discovery until preliminary questions that may dispose of the

case are determined."); and *Scroggins v. Air Cargo, Inc.*, 534 F.2d 1124, 1133 (5th Cir. 1976)

(staying discovery pending disposition of summary judgment motion).

It is impossible to determine the scope of discovery (if any should the case be dismissed) at

this stage of the proceeding. A stay of discovery pending disposition of the motion to dismiss shall

not prejudice *any* party. Such a stay would comport with the preferred majority view that discovery

should be stayed where a case dispositive motion is pending, or the scope of discovery will be

altered based upon challenges to possibly non-sustainable claims.

As a predicate to filing this motion, the undersigned in good faith attempted to reach

agreement with opposing counsel on this issue. The effort was less than fruitful.

## Conclusion

For the foregoing reasons and authority, defendant, Hamilton Bank, N.A., respectfully

requests that this Court stay all discovery pending disposition of the motion to dismiss on the ground

6

of *forum non conveniens*, or alternatively, provide Hamilton Bank with a thirty (30) day enlargement

of time, up to and including May 18, 2001, in which to respond to the discovery here attached as

Composite Appendix 1.

Respectfully submitted,

GREENBERG TRAURIG, P.A.
Attorneys for Hamilton Bank, N.A.
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By: _____

Pedro J. Martinez-Fraga
Florida Bar No. 752282

7

### CERTIFICATE OF SERVICE

We hereby certify that on this *13* day of April, 2001, a true copy of the foregoing document was mailed to: **Michael Diaz, Jr., Esq.**, 3400 Bank of America Tower, 100 S.E. 2nd Street, Miami, Florida, 33131; **Eric W. Bloom, Esq.**, 1400 L Street, N.W., Washington, D.C., 20005-3502; **Justin C. Fineberg, Esq.**, 100 S.E. 2nd Street, Suite 3400, Miami, Florida, 33131; and to **J. Reid Bingham, Esq.** and **Susana Betancourt, Esq.**, Hamilton Bank, 3750 N.W. 87 Avenue, 7th Floor, Miami, Florida 33178.

PEDRO J. MARTINEZ-FRAGA

MIAMI3/MARTINEP/203721/4d6x01!.DOC/4/13/01/17015.040100

8

GREENBERG TRAURIG, P.A.
1221 BRICKELL AVENUE MIAMI, FLORIDA 33131
305-579-0500 FAX 305-579-0717 www.gtlaw.com
MIAMI NEW YORK WASHINGTON, D.C. ATLANTA PHILADELPHIA TYSONS CORNER CHICAGO BOSTON PHOENIX WILMINGTON LOS ANGELES DENVER
SÃO PAULO FORT LAUDERDALE BOCA RATON WEST PALM BEACH ORLANDO TALLAHASSEE

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

EDIE ROLANDO PINTO LEMUS,

Plaintiff,

**Case No.: 00-3397-CIV-HIGHSMITH**

vs.

**Magistrate Judge: Garber**

HAMILTON BANK, N.A.,

A National Banking Association

Defendant.

_____/

## PLAINTIFF'S FIRST SET OF RULE 26.1.G. INTERROGATORIES

Plaintiff, EDIE ROLANDO PINTO LEMUS, propounds the following

Interrogatories upon Defendant, Hamilton Bank, N.A., and requests that they be

answered separately, fully and under oath within thirty (30) days of service pursuant to

Fed. R. Civ. P. 33 and S. D. Fla. L.R. 26.1.G.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the attached interrogatories,

along with a copy of this Notice of Service, was served by mail upon: Pedro J. Martinez-

Fraga, Esq., Greenberg Traurig, P.A. 1221 Brickell Avenue, Miami, Florida 33131; J.

Florida 33131; J. Reid Bingham, Esquire, 3750 N.W. 87th Avenue, 7th Floor, Miami,

Florida, 33178; Justin C. Fineberg, Esquire, 100 S.E. 2nd Street, Suite 3400, Miami,

Florida, 33131; and Eric W. Bloom, Esquire, 1400 L Street, N.W., Washington, D.C.,

20005-3502 on this 16th day of March, 2001.

> LAW OFFICES OF MICHAEL DIAZ, JR
> Attorneys for Plaintiff
> 3400 Bank of America Tower
> 100 S.E. 2nd Street
> Miami, Florida 33131
> Tele: (305) 375-9220 Fax: (305) 375-8050
>
> By: _____
> Michael Diaz, Jr.
> Florida Bar No. 606774

2

## DEFINITIONS

(a)     The words "you," "yours" and/or "yourselves" means Hamilton Bank, N.A. and any directors, officers, employees, agents, representatives or other persons acting or purporting to act on its behalf.

(b)     The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" mean "including without limitation."

(c) "Date" shall mean the exact date, month and year, if ascertainable or, if not, the best approximation of the date (based upon relationship with other events).

(d)     The word "document" shall mean any writing, recording or photograph in your actual or constructive possession, custody, care or control, which pertain directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to the issues in this action, or which are themselves listed below as specific documents, including, but not limited to:  correspondence, memoranda, notes, messages, diaries, minutes, books, reports, charts, ledgers, invoices, computer printouts, microfilms, video tapes or tape recordings.

(e)     "Agent" shall mean: any agent, employee, officer. director, attorney, independent contractor or any other person acting at the direction of or on behalf of another.

(f)     "Person" shall mean any individual, corporation, proprietorship. partnership. trust. association, or any other entity.

(g)     The words "pertain to" or "pertaining to" mean: relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, consituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts or contradicts.

(h)     The term "third party" or "third parties" refers to individuals or entities that are not a party to this action.

(i)     The term "action" shall mean the case entitled *Edie Rolando Pinto Lemus v Hamilton Bank, N.A.*, Case No.: 00-3397-CIV-HIGHSMITH, pending in the United States District Court for the Southern District of Florida.

(j)     The word "identify," when used in reference to a document, means and includes the name and address of the custodian of the document, the location of the document, and the general description of the document, including (1) the type of document (i.e. correspondence, memorandum, facsimile, etc.); (2) the general subject matter of the document; (3) the date of the document; (4) the author of the document; (5)

3

the addressee of the document; and (6) the relationship of the author and addressee to each other.

## INSTRUCTIONS

If you object to fully identifying a document or oral communication because of a privilege, you must nevertheless provide the following information pursuant to S.D. Fla. L.R. 26.1G.6(b), unless divulging the information would disclose the privileged information:

(1) the nature of the privilege claimed (including work product);

(2) if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked;

(3) the date of the document or oral communication;

(4) if a document; its type (correspondence, memorandum, facsimile, etc.), custodian, location, and such other information sufficient to identify the document for a subpoena duces tecum or a document request, including were appropriate the author, the addressee, and, if not apparent, the relationship between the author and the addressee;

(5) if an oral communication: the place where it was made, the names of the persons present while it was made, and if not apparent, the relationship of the persons present to the declarant;

(6) the general subject matter of the document or oral communication.

You are under a continuous obligation to supplement your answers to these interrogatories under the circumstances specified in Fed.R.Civ.P. 26(e).

## **INTERROGATORIES**

      1.  Please provide the name, address, telephone number, place of employment, and job title of any person who has, claims to have, or whom you believe may have knowledge or information pertaining to any fact alleged in the pleadings (as defined in Fed.R.Civ.P. 7(a)) filed in this action, or any fact underlying the subject matter of this action.

Case No.: 00-3397-CIV-HIGHSMITH

     2.  Please state the specific nature and substance of the knowledge that you
believe the person(s) identified in your response to interrogatory no. 1 may have.

        3.  Please provide the name of each person whom you may use as an expert witness at trial.

4. Please state in detail the substance of the opinions to be provided by each person whom you may use as an expert witness at trial.

8

5. Please identify each document (including pertinent insurance agreements) pertaining to any fact alleged in any pleading (as defined in Fed.R.Civ.P. 7(a)) in this action, including without limitation and defenses you have asserted or intend to assert in this action.

Hamilton Bank, N.A.

By_____

Its_____

State of _____)
County of _____)

     Personally appeared before me, _____, a
representative of Hamilton Bank, N.A., who, first being sworn, deposes and says that
the foregoing Answers to Interrogatories are true to the best of his/her knowledge,
information and belief. Sworn to and subscribed before me this ___ day of
_____, 2001.

 

                               _____
                               NOTARY PUBLIC
                               STATE OF FLORIDA at large

                               _____
                               (Name of notary typed, printed or
                               stamped)

My commission expires:

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

EDIE ROLANDO PINTO LEMUS,

      Plaintiff,

vs.

HAMILTON BANK, N.A.,

A National Banking Association

      Defendant.

_____/

**Case No.: 00-3397-CIV-HIGHSMITH**

**Magistrate Judge: Garber**

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION

      Pursuant to Rule 34, Fed.R.Civ.P., Plaintiff, Edie Rolando Pinto Lemus, requests that Defendant, Hamilton Bank, N.A., produce within thirty days of service of this request the documents and other items herein described pursuant to the Federal Rules of Civil Procedure. Defendant is requested to make such production at the Law offices of Michael Diaz Jr., 3400 NationsBank Tower, 100 S.E. Second Street, Miami, FL 33131.

## DEFINITIONS

      The following definitions are applicable to and incorporated by reference into each request for production of documents:

A.	The term "document" or "documents" mean the original and all copies of any written, printed, typed or other graphic matter of any kind or nature and any other tangible thing in your custody or control, including but not limited to:

1)	all contracts, agreements, letter agreements, representations, warranties, certificates, and opinions;

2)	all letters or other forms of correspondence or communication, including envelopes and notes, telegrams, cables, e-mails, telex messages and messages, including reports, notes, notations and memoranda of or relating to telephone conversations or conferences;

3)	all memoranda, bills, reports, test results, account statements, financial statements or reports, notes, scripts, transcripts, tabulations, studies, analyses, evaluations, projections, work papers, corporate records or copies thereof, expressions or statements of policy, lists, comparisons, questionnaires, surveys, charts, graphs, summaries, extracts, statistical statements or records, compilations and opinions of reports of consultants;

4)	all desk calendars, appointment books, pocket calendars, and diaries;

5)	all minutes, records or transcripts of meetings and conferences, and lists of persons attending meetings or conferences;

6)	all reports and summaries of interviews or negotiations;

7)	all books, articles, press releases, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, instructions and manuals;

8)	all motion pictures and photographs (whether developed or undeveloped), tape recordings, microfilms, phonographs, tapes or other records, computerized information, punch cards, magnetic tapes, discs, data cells, drums, print-outs, and other data compilations from which information can be obtained;

9)	drafts of any document, revisions of drafts of any documents and original or preliminary notes prepared in connection with such documents, whether used or not;

10)	any non-identical copy of any document; and

2

11) all information noted in any computer or in any magnetic or other medium.

B. The term "communication" means all statements, admissions, denials, inquiries, discussions, conversations, negotiations, agreements, contracts, understandings, meetings, telephone conversations, letters, correspondence, notes, telegrams, e-mails, telexes, advertisements, or any other form of written or verbal intercourse.

C. The term "relate to" or "relating to" means constitutes, refers, reflects, concerns, pertains to, describes, evidences, supports, discusses, or in any way logically or factually connects with the matter described or referenced in the request.

D. The terms "you," "your," "Hamilton Bank" or "Defendant," shall mean not only Hamilton Bank, N.A., but all agents, attorneys, accountants, consultants, representatives, private investigators, independent contractors, officers, directors, employees, predecessors, successors, subsidiaries, affiliates, parent corporations (including Hamilton Bancorp, Inc.), banks, financial institutions, or persons acting on its behalf.

E. The terms "Plaintiff," "Edie Pinto" or "Pinto" shall mean not only Edie Rolando Pinto Lemus, but all agents, attorneys, accountants, consultants, representatives, private investigators, independent contractors, officers, directors, employees, predecessors, successors, subsidiaries, affiliates, parent corporations, or persons acting on his behalf.

F. The terms "Ernesto Urcuyo Abarca" or "Urcuyo" shall mean not only Ernesto Urcuyo Abarca, but all agents, attorneys, accountants, consultants, representatives, private investigators, independent contractors, officers, directors, employees, predecessors, successors, subsidiaries, affiliates, parent corporations, or persons acting on his behalf.

G. The terms "Gerardo Berger Villacorta" or "Berger" shall mean not only Gerardo Berger Villacorta, but all agents, attorneys, accountants, consultants, representatives, private investigators, independent contractors, officers, directors, employees, predecessors, successors, subsidiaries, affiliates, parent corporations, or persons acting on his behalf.

H. The terms "Proagsa, Ltd." or "Proagsa" shall mean not only Proagsa, Ltd., but all agents, attorneys, accountants, consultants, representatives, private investigators, independent contractors, officers, directors, employees, predecessors, successors, subsidiaries, affiliates, parent corporations, banks, financial institutions, or persons acting on its behalf.

I. The terms "Dario Boanerges Chacon Morales" or "Chacon" shall mean not only Dario Boanerges Chacon Morales, but all agents, attorneys, accountants, consultants, representatives, private investigators, independent contractors, officers,

3

directors, employees, predecessors, successors, subsidiaries, affiliates, parent corporations, or persons acting on his behalf.

J.     The terms "Tradisa, S.A.," "Transacciones Diversas, S.A." or "Tradisa" shall mean not only Tradisa, S.A., but all agents, attorneys, accountants, consultants, representatives, private investigators, independent contractors, officers, directors, employees, predecessors, successors, subsidiaries, affiliates, parent corporations, banks, financial institutions, or persons acting on its behalf.

K.     The terms Intercredit y Valores, S.A., a/k/a Intercredit Finance, S.A. and/or INVASA or "Intercredit" shall mean not only Intercredit y Valores, S.A., but all agents, attorneys, accountants, consultants, representatives, private investigators, independent contractors, officers, directors, employees, predecessors, successors, subsidiaries, affiliates, parent corporations, banks, financial institutions, or persons acting on its behalf.

L. The terms "Barbados, S.A." or " Barbados" shall mean not only Barbados, S.A., but all agents, attorneys, accountants, consultants, representatives, private investigators, independent contractors, officers, directors, employees, predecessors, successors, subsidiaries, affiliates, parent corporations, banks, financial institutions, or persons acting on its behalf.

M.     The term "Banco Uno" shall mean not only Banco Uno but all agents, attorneys, accountants, consultants, representatives, private investigators, independent contractors, officers, directors, employees, predecessors, successors, subsidiaries, affiliates, parent corporations, banks, financial institutions, or persons acting on its behalf.

N.     The terms "Corporation Financeria Americana, S.A., a/k/a CONFIA" or "CONFIA" shall mean not only Corporation Financeria Americana, S.A. but all agents, attorneys, accountants, consultants, representatives, private investigators, independent contractors, officers, directors, employees, predecessors, successors, subsidiaries, affiliates, parent corporations, banks, financial institutions, or persons acting on its behalf.

O.     All references to documents are those:

      1)     in the actual possession of Defendant;

      2)     in the custody or possession of Defendant, that are located elsewhere;

      3)     in the care, custody and control of Defendant, although in the possession of its attorneys, accountants, agents or employees; and

4

4)      all other documents, wherever located, as to which Defendant has right of possession.

## RULES OF CONSTRUCTION

In construing each request for production of documents:

A.      The singular shall include the plural, and plural shall include the singular.

B.      A masculine, feminine or neuter pronoun shall include each of the other genders.

C.      The terms "and" as well as "or" shall be construed disjunctively as well as conjunctively. The term "all" means "any and all." The term "each" means "each and every," and the term "every" means "each and every."

D.      Unless otherwise specified in the request for production, each request shall extend to all documents which have been available to, in the possession of or subject to the control of plaintiff and all other persons acting or purporting to act for plaintiff on her behalf. Documents shall be provided which are in the possession of plaintiff up to the last date of compliance with the request for production. This paragraph does not limit your duty to supplement your response pursuant to the Federal Rules of Civil Procedure.

E.      When producing the documents, keep all documents segregated by the file in which the documents are contained and indicate the name of the file in which the documents are contained and the name of the documents being produced.

F.      If any document or file of documents requested herein has been removed for any reason, identify, by name and address, the person who removed the document or file, the title of the document or file, and each subfile, if any, maintained within the file, and the present location of the document or file.

G.      If any document or file of documents requested herein has been lost or destroyed since its creation, identify the document or file by title, author, date and subject matter, and state when, where, how, and by whom the document or file was lost or destroyed, and identify, by name and address the person who last had custody of the missing document or file.

H.      Each document request shall be construed independently, and no document request shall be viewed as limiting the scope of any other document request.

I.      Each and every nonidentical copy of a document, whether different from the original because of stamps, indications of the recipient(s), handwritten notes, marks, attachments, or any other reason, is a separate document that must be produced.

5

## DATES OF REQUEST

The period of time encompassed by this document request, except where otherwise noted herein, shall be from **January 1, 1990** to this day.

## CLAIMS OF PRIVILEGE

If any requested documents are withheld from production based on a claim of privilege, work product or any reason, you shall state with respect to each such document:

1) the nature or basis of the claim of privilege or other ground for nonproduction (including work product);

2) the names, addresses, and job title of all parties to the communication (including the author, addressee and all other persons who have been copied on the communication);

3) its type (letter, memo, etc.), date, and number of pages of the document or communication;

4) the current custodian and present location of the document or communication; and

5) the general subject matter of the document or communication.

## DOCUMENTS REQUESTED

1. All documents filed with any applicable government authority (including but not limited to the State of Florida and any applicable banking authority) relating to the identity and/or status of Hamilton Bank's a) officers; b) directors; and c) shareholders.

2. All documents filed with any applicable government authority (including but not limited to the State of Florida and any applicable banking authority) relating to the identity and/or status of Hamilton Bancorp's a) officers; b) directors; and c) shareholders.

3. All documents that relate to the relationship between Hamilton Bank and Hamilton Bancorp.

4. All documents relating to Urcuyo.

5. All documents that relate to Urcuyo acting as an officer of Hamilton Bank, whether it be actual, substituted, absentee, nominee, "off the books" or in any capacity whatsoever.

6. All documents that relate to Urcuyo acting as a director of Hamilton Bank, whether it be actual, substituted, absentee, nominee, "off the books" or in any capacity whatsoever.

6

7. All documents relating to Urcuyo being a shareholder, directly or indirectly, and the amount and/or percentage of stock in Hamilton Bank.

8. All documents relating to Urcuyo acting as an agent of Hamilton Bank.

9. All documents demonstrating that Urcuyo is not and/or was not an agent of Hamilton Bank.

10. All documents relating to Urcuyo being an employee of Hamilton Bank.

11. All documents demonstrating that Urcuyo is not and/or was not an employee of Hamilton Bank.

12. All documents relating to Urcuyo being a management level employee of Hamilton Bank.

13. All documents demonstrating that Urcuyo is not and/or was not a management level employee of Hamilton Bank.

14. All documents relating to Urcuyo acting as a representative of Hamilton Bank.

15. All documents demonstrating that Urcuyo is not and/or was not a representative of Hamilton Bank.

16. All documents relating to Hamilton Bank soliciting, procuring and/or opening of Hamilton Bank accounts in Central America.

17. All documents between Urcuyo and Hamilton Bank relating to soliciting, procuring and/or opening of Hamilton Bank accounts.

18. All documents relating to payments from Hamilton Bank to Urcuyo.

19. All documents relating to payments from Hamilton Bank and/or Hamilton Bancorp to Urcuyo for soliciting, procuring and/or opening Hamilton Bank accounts.

20. All documents relating to correspondence between Hamilton Bank and Urcuyo.

21. All documents relating to Berger.

22. All documents that relate to Berger acting as an officer of Hamilton Bank, whether it be actual, substituted, absentee, nominee, "off the books" or in any capacity whatsoever.

23. All documents that relate to Berger acting as a director of Hamilton Bank, whether it be actual, substituted, absentee, nominee, "off the books" or in any capacity whatsoever.

24. All documents relating to Berger being a shareholder, directly or indirectly, and the amount and/or percentage of stock in Hamilton Bank.

25. All documents relating to Berger acting as an agent of Hamilton Bank.

26. All documents demonstrating that Berger is not and/or was not an agent of Hamilton Bank.

27. All documents relating to Berger being an employee of Hamilton Bank.

Case No.: 00-3397-CIV-HIGHSMITH

28. All documents demonstrating that Berger is not and/or was not an employee of Hamilton Bank.

29. All documents relating to Berger being a management level employee of Hamilton Bank.

30. All documents demonstrating that Berger is not and/or was not a management level employee of Hamilton Bank.

31. All documents relating to Berger acting as a representative of Hamilton Bank.

32. All documents demonstrating that Berger is not and/or was not a representative of Hamilton Bank.

33. All documents relating to Hamilton Bank soliciting, procuring and/or opening of Hamilton Bank accounts in Central America.

34. All documents between Berger and Hamilton Bank relating to soliciting, procuring and/or opening of Hamilton Bank accounts.

35. All documents relating to payments from Hamilton Bank to Berger.

36. All documents relating to payments from Hamilton Bank to Berger for soliciting, procuring and/or opening Hamilton Bank accounts.

37. All documents relating to correspondence between Hamilton Bank and Berger.

38. All documents relating to Proagsa.

39. All documents relating to Proagsa being an employee of Hamilton Bank.

40. All documents demonstrating that Proagsa is not and/or was not an employee of Hamilton Bank.

41. All documents relating to Proagsa acting as a representative of Hamilton Bank.

42. All documents demonstrating that Proagsa is not and/or was not a representative of Hamilton Bank.

43. All documents relating to Proagsa is and/or was an agent of Hamilton Bank.

44. All documents demonstrating that Proagsa is not and/or was not an agent of Hamilton Bank.

45. All documents relating to Proagsa being a shareholder, directly or indirectly, and, if so, in what amount and/or percentage of Hamilton Bank.

46. All documents, including agreements, between Proagsa and Hamilton Bank.

47. All documents, including agreements, between Proagsa and Hamilton Bank and/or Hamilton Bancorp relating to soliciting, procuring and/or opening of Hamilton Bank accounts in Central America, including Guatemala.

48. All documents relating to payment from Hamilton Bank to Proagsa.

8

49. All documents relating to payment from Hamilton Bank to Proagsa for soliciting, procuring and/or opening Hamilton Bank accounts for to persons residing in Central America and/or South America, including Guatemala.

50. All documents relating to correspondence between Hamilton Bank and Proagsa.

51. All documents identifying who the shareholders of Hamilton Bancorp, Inc. were and in what amounts and/or percentages.

52. All documents indicating who the officers of Hamilton Bancorp. Inc. were from 1990 to date.

53. All documents indicating who the directors of Hamilton Bancorp, Inc. were from 1990 to date.

54. All documents relating to requests for Hamilton Bank business cards for Urcuyo and/or Berger.

55. All documents relating to invoices or bills to Hamilton Bank for business cards for Urcuyo and/or Berger.

56. All documents relating to invoices for business cards produced for Hamilton Bank.

57. All documents relating to Hamilton Bank's activities in Guatemala.

58. All documents relating to Hamilton Bank's efforts to procure private banking customers in Guatemala.

59. All documents relating to Hamilton Bank's application to governmental authorities in Guatemala to conduct banking or other related activities.

60. All documents relating to correspondence between Hamilton Bank and any Guatemalan governmental authorities.

61. All documents relating to correspondence between Hamilton Bank and any Guatemalan governmental authorities relating to any requests of Hamilton Bank to conduct banking and other related activities in Guatemala.

62. All documents relating to Hamilton Bank accounts opened by Proagsa.

63. All documents, including agreements, between Hamilton Bank and Proagsa relating to the distribution of Hamilton Bank account information by Proagsa.

64. All documents, including agreements, between Hamilton Bank and Urcuyo relating to the distribution of Hamilton Bank account information by Proagsa.

65. All documents, including agreements, between Hamilton Bank and Berger relating to the distribution of Hamilton Bank account information by Proagsa.

66. All documents relating to the "special handling" by Proagsa of Hamilton Bank accounts with which Proagsa is and/or was associated.

67. All documents relating to Chacon.

68. All documents between Hamilton Bank and Chacon relating to his relationship with Hamilton Bank.

69. All documents relating to payments by Hamilton Bank and Chacon.

70. All documents relating to correspondence between Hamilton Bank and Chacon.

71. All documents, including agreements, between Hamilton Bank and Tradisa.

72. All documents relating to Tradisa's relationship with Hamilton Bank.

73. All documents relating to Tradisa.

74. All documents relating to any transactions between Hamilton Bank and Tradisa.

75. All documents relating to any payments by and between Hamilton Bank and Tradisa.

76. All documents, including agreements, between Hamilton Bank and Intercredit

77. All documents relating to Intercredit.

78. All documents relating to any transaction by and between Hamilton Bank and Intercredit.

79. All documents relating to payments by and between Hamilton Bank and Intercredit.

80. All documents relating to correspondence between Hamilton Bank and Intercredit.

81. All documents relating to Barbados.

82. All documents, including agreements, between Barbados, S.A. and Hamilton Bank.

83. All documents relating to any transaction by and between Hamilton Bank and Barbados.

84. All documents relating to payments by and between Hamilton Bank and Barbados.

85. All documents relating to correspondence between Hamilton Bank and Barbados.

86. All documents relating to Banco Uno.

87. All documents, including agreements, between Banco Uno and Hamilton Bank.

88. All documents relating to any transaction by and between Hamilton Bank and Banco Uno.

89. All documents relating to payments by and between Hamilton Bank and Banco Uno.

10

90. All documents relating to correspondence between Hamilton Bank and Banco Uno.

91. All documents relating to CONFIA.

92. All documents, including agreements, between CONFIA and Hamilton Bank.

93. All documents relating to any transaction by and between Hamilton Bank and CONFIA.

94. All documents relating to payments by and between Hamilton Bank and CONFIA.

95. All documents relating to correspondence between Hamilton Bank and CONFIA.

96. All documents relating to training sessions in Guatemala on opening accounts with Hamilton Bank.

97. All documents used by or referred to in training sessions in Guatemala on opening accounts with Hamilton Bank in Miami, Florida.

98. All documents relating to Hamilton Bank employees, agents and/or representatives, traveling to Guatemala to train persons to open accounts with Hamilton Bank in Miami, Florida.

99. All documents relating to travel by Hamilton Bank to Guatemala.

100. All documents relating to Hamilton Bank's acceptance of deposits in Guatemala for its private banking customers with accounts at Hamilton Bank in Miami, Florida.

101. All documents demonstrating that Hamilton Bank did not accept deposits in Guatemala for its private banking customers with accounts at Hamilton Bank in Miami, Florida.

102. All documents relating to Urcuyo accepting deposits in Guatemala for Hamilton Bank's private banking customers with accounts at Hamilton Bank in Miami, Florida.

103. All documents demonstrating that Urcuyo did not accept deposits in Guatemala for Hamilton Bank's private banking customers with accounts at Hamilton Bank in Miami, Florida.

104. All documents relating to Berger accepting deposits in Guatemala for Hamilton Bank's private banking customers with accounts at Hamilton Bank in Miami, Florida.

105. All documents demonstrating that Berger did not accept deposits in Guatemala for Hamilton Bank's private banking customers with accounts at Hamilton Bank in Miami, Florida.

106. All documents relating to Proagsa accepting deposits in Guatemala for Hamilton Bank's private banking customers with accounts at Hamilton Bank in Miami, Florida.

107.   All documents demonstrating that Proagsa did not accept deposits in Guatemala for Hamilton Bank's private banking customers with accounts at Hamilton Bank in Miami, Florida.

108.   All documents relating to Edie Pinto.

109.   All documents relating to Edie Pinto's account relationship with Hamilton Bank.

110.   All documents relating to account number 03004070744 account.

111.   All documents relating to the deposit of the checks attached hereto as Exhibit A.

112.   All documents relating to the processing of the checks attached hereto as Exhibit A.

113.   All documents relating to Hamilton Bank's issuance of the checks to Edie Pinto attached hereto as Exhibit A.

114.   All documents relating to Hamilton Bank soliciting Pinto to open an account with Hamilton Bank.

115.   All documents relating to Hamilton Bank's acceptance of deposits in Guatemala for its private banking customers with Hamilton Bank accounts in Miami, Florida.

116.   All documents demonstrating that Hamilton Bank did not solicit Pinto to open an account with Hamilton Bank.

117.   All documents relating to Urcuyo and/or Berger soliciting Pinto to open an account with Hamilton Bank.

118.   All documents demonstrating that Urcuyo and/or Berger did not solicit Pinto to open an account with Hamilton Bank.

119.   All documents relating to agreements between Hamilton Bank and Edie Pinto.

120.   All documents relating to Hamilton Bank representing to Pinto that it would pick up checks made out to Pinto from Agricafe, S.A.

121.   All documents demonstrating that Hamilton Bank did not represent to Pinto that it would pick up checks made out to Pinto from Agricafe.

122.   All documents relating to Urcuyo and/or Berger representing to Pinto that they would pick up checks made out to Pinto from Agricafe.

123.   All documents demonstrating that Urcuyo and/or Berger did not represent to Pinto that they would pick up checks made out to Pinto from Agricafe.

124.   All documents relating to Hamilton Bank's representations to Pinto that it would provide an immediate credit to Pinto's Hamilton Bank account in Miami, Florida of checks Hamilton Bank picked up from Agricafe and made out to Pinto.

125.   All documents demonstrating that Hamilton Bank did not represent to Pinto that it they would provide an immediate credit to Pinto's Hamilton Bank account in Miami, Florida of checks Hamilton Bank picked up from Agricafe and made out to Pinto.

126.   All documents relating to Urcuyo and/or Berger's representations to Pinto that Hamilton Bank would provide an immediate credit to Pinto's Hamilton Bank account in Miami, Florida of checks Hamilton Bank picked up from Agricafe and made out to Pinto.

127.   All documents demonstrating that Urcuyo and/or Berger did not represent to Pinto that Hamilton Bank would provide an immediate credit to Pinto's Hamilton Bank account in Miami, Florida of checks Hamilton Bank picked up from Agricafe and made out to Pinto.

128.   All documents relating to Pinto's authorization to Hamilton Bank to pick up from Agricafe checks made out to Pinto and deposit the same into Pinto's account at Hamilton Bank in Miami.

129.   All documents demonstrating that Pinto did not authorize Hamilton Bank to pick up from Agricafe checks made out to Pinto and deposit the same into Pinto's account at Hamilton Bank in Miami.

130.   All documents relating to Hamilton Bank retrieving from Agricafe 56 checks made out to Pinto.

131.   All documents demonstrating that Hamilton Bank did not pick up from Agricafe 56 checks made out to Pinto.

132.   All documents relating to a credit in Pinto's account at Hamilton Bank in Miami of checks from Agricafe made out to Pinto.

133.   All documents relating to correspondence by and between Hamilton Bank and Pinto.

134.   All documents by and between Hamilton Bank and Pinto relating to Pinto's requests for information regarding his account at Hamilton Bank.

135.   All documents which indicate that Hamilton Bank is not the cause of Pinto's damages.

136.   All documents which support any and all defenses of Hamilton Bank which Hamilton Bank has asserted or intends to assert in this action.

137.   All documents relating to income reporting documents filed by Hamilton Bank with the United States Internal Revenue Service regarding: Urcuyo, Berger, Proagsa, Chacon, Tradisa, (Account Number 030001105), INVASA, CONFIA, and Intercredit Finance Corp.

138.   All account opening information for Proagsa at Hamilton Bank, including but not limited to account number 0400-82050.

139.   All documents relating to Hamilton Bank accounts for Urcuyo, Berger and/or Proagsa.

13

140.    All documents relating to letters of recommendation on behalf of Urcuyo, Berger and/or Proagsa, to open any Proagsa account.

141.    A documents relating to wire transfers to Urcuyo, Berger and/or Proagsa's account at Hamilton Bank.

142.    All documents relating to financial statements and/or balance sheets of Proagsa.

143.    All documents that relate to any relationship between Proagsa and: Urcuyo, Berger, Chacon, Tradisa, (Account Number 030001105), INVASA, CONFIA, and/or Intercredit Finance Corp.

144.    All documents that relate to any relationship between Urcuyo and: Berger, Chacon, Tradisa, (Account Number 030001105), INVASA, CONFIA, and/or Intercredit Finance Corp.

145.    All documents relating to dividends paid by Hamilton Bank to Urcuyo.

146.    All documents relating to dividends paid by Hamilton Bank to Berger.

147.    All documents relating to dividends paid by Hamilton Bank to Proagsa.

148.    All documents relating to dollar receipts, credit, and/or transfers to Hamilton Bank on behalf of or for the benefit of Proagsa, Urcuyo and/or Berger:

a. from: El Salvador from Dina Herrera and/or Jobel Rodriguez;

b. from: Honduras from Jose Tefel;

c. from: Nicaragua from Henry Baez, and/or Azucar "Inasue"; and/or

d. from: Panama from Intercredit-Panama and/or Elias Cano.

149.    All documents relating to third party checks and/or wire transfers deposited into accounts held by Proagsa, Urcuyo and/or Berger at Hamilton Bank.

150.    All documents relating to the opening of accounts for the following: Berta Lemus Pinto; Carlos Pinto; Edie Pinto; Chacon, TRADISA (Account Number 030001105); INVASA; CONFIA; and Intercredit Finance Corp.

151.    All documents relating to transfers of money from Proagsa's account to the account of: Berta Lemus Pinto; Carlos Pinto; Edie Pinto; Chacon, TRADISA (Account Number 030001105); INVASA; CONFIA; and Intercredit Finance Corp

152.    All documents relating to transfers, deposits or other payments from Hamilton Bank to Proagsa account.

153.    All documents relating to charges, fees and expenses debited or billed to Proagsa by Hamilton Bank for: overdrafts, letter/lines of credit, costs of transfers, checks drawn, checkbooks; faxes; and photocopies.

154.    All documents that relate to the privileges Urcuyo and/or Berger received at Hamilton Bank, including but not limited to: overdraft privileges; waiver of charges for bad checks deposited in accounts; immediate account credits without delay; and acceptance and deposits of double endorsed checks.

14

bad checks deposited in accounts; immediate account credits without delay; and acceptance and deposits of double endorsed checks.

. 155. All documents relating to financial statements, balance sheets, and income statements provided to Hamilton Bank by Proagsa.

156. All documents from November 17, 1994 to March 7, 1995 relating to payments or deposits made by Hamilton Bank to any account held by Proagsa at Hamilton Bank.

157. All documents relating to transfers of money from Proagsa' account at Hamilton Bank in favor of Agriculture Industrial Service Corporation ("**AGIC**").

158. All documents relating to transfers credited to Pinto's account at Hamilton Bank from Proagsa's account at Hamilton Bank.

159. All documents relating to transfers credited to Carlos Pinto and/or Berta Lemus Pinto's accounts at Hamilton Bank through Proagsa's account at Hamilton Bank.

160. All documents reflecting or demonstrating wire or money transfers made to Urcuyo's and/or Berger's account from Pinto's account.

161. All documents relating to deposits into Proagsa's account with Hamilton Bank from April 19, 1994 to June 1, 1996.

162. All documents that relate to wire transfer instructions from Proagsa to Hamilton Bank for further credit to Roberto Morales and/or Jose Maria Martinez Leal, and/or Gerardo Carazo, and/or Julian La Madrid.

163. All documents relating to the following transfers to Proagsa's account:

a. On August 29, 1994 for an amount of $27,773.44;

b. On October 24, 1994 for an amount $12,845.00;

c. On September 28, 1994 for an amount of $13,389.00; and

d. On October 14, 1994 for the amount of $60,000.00.

164. All documents relating to bank accounts and bank account information for Urcuyo.

165. All documents relating to bank accounts and bank account information for Berger.

166. All documents relating to bank accounts and bank account information for Proagsa.

167. All documents relating to the following transfers from Proagsa to Urcuyo and/or Berger:

a. On January 25, 1995 transfer number 2629 for $400,000.00.

b. On January 3, 1995 transfer number 2627 for the amount of $200,000.00.

c. On February 3,1995 transfer number 2633 in the amount of $350,000.00.

15

168.    All documents relating to criminal, civil and/or administrative inquiries by the U.S. law enforcement and/or regulatory authorities relating to Proagsa's account at Hamilton Bank, N.A.

169.    All documents relating to the purchase and/or deposit of checks into the account of Proagsa at Hamilton Bank N.A., which possesses the outlined endorsement, stamp, marking or characteristics, a copy of which are attached hereto as Exhibit "B" on the back of each check.

170.    All documents relating to any reserve created in response to this litigation.

171.    All correspondence between Hamilton Bank and anyone relating to the substance of the allegations of the complaint.

172.    All documents identified in any responses to interrogatories propounded in this action.

173.    All documents that relate to the substance of the allegations asserted in this action.

174.    All documents upon which you relied in responding to any interrogatories propounded in this action.

Respectfully submitted this _11th_ day of _March_ 2001.

LAW OFFICES OF MICHAEL DIAZ, JR
Attorneys for Plaintiff
3400 Bank of America Tower
100 S.E. 2nd Street
Miami, Florida 33131
Telephone: (305) 373-9220

By: _____

Michael Diaz, Jr.
Florida Bar No. 606774

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this _16th_ day of March, 2001, to:   Pedro J. Martinez-Fraga, Esq., Greenberg Traurig, P.A. 1221 Brickell Avenue, Miami, Florida 33131; J. Reid Bingham, Esquire, 3750 N.W. 87th Avenue, 7th Floor, Miami, Florida, 33178; Justin C. Fineberg, Esquire, 100 S.E. 2nd Street, Suite 3400, Miami, Florida, 33131; and Eric W. Bloom, Esquire, 1400 L Street, N.W., Washington, D.C., 20005-3502.

By: _____

Michael Diaz, Jr.

16



08801
83-1144/650
BRANCH 4

NAME
ACCT. No.
COUNTER CHECK
Guate 01/02 ø 95
$100,000. —

CATALINA DE PORTILLO
CIEN MIL. —
dollars

HAMILTON
BANK N.A.
Miami, Florida 33178

⑆008801⑆ ⑈0660114444⑈ 030040744⑆ ⑈0010000000⑈

---

08802
63-1144/650
BRANCH 4

NAME
ACCT. No.
COUNTER CHECK
31 Enero ø 95
$250,000.⁼

Banco del Café S.A.
Doscienta Cincuenta m/
/100
dollars

HAMILTON
BANK N.A.
Miami, Florida 33178

⑆008802⑆ ⑈0660114444⑈ 030040744⑆ ⑈0025000000⑈

---

08803
63-1144/650
BRANCH 4

NAME
ACCT. No.
COUNTER CHECK
Guatemala 8/2 ø95. —
$12,000.¹⁰

Ricardo Cordon
Doce mil dolores.—
dollars

HAMILTON
BANK N.A.
Miami, Florida 33178

⑆008803⑆ ⑈0660114444⑈ 030040744⑆ ⑈0012000000⑈

---

08804
63-1144/650
BRANCH 4

NAME
ACCT. No.
COUNTER CHECK
3 Enero ø95
$100,000.⁼

Catalina De Antillo —
Cien mil /100 —
dollars







79

EDIE ROLANDO PINTO

0112

83-1144/660
BRANCH 3

80

22 DE FEBRERO 19 95

BANCO DE $500,000.00

QUINIENTOS MIL EXACTOS.

DOLLARS

HAMILTON
BANK N.A.
Miami, Florida 33178   2 7 9 5

FOR

⑆0660⑆11444⑆   030040744⑈   0⑈12   ⑈0050000000⑈

---



EDIE ROLANDO PINTO

0114

83-1144/660
BRANCH 3

25 Feb. 19 95

PAY TO THE
ORDER OF   Banco del Mar-piente —   $ 100,000.⁰⁰

Cien mil ⁰⁰/100 —

DOLLARS

HAMILTON
BANK N.A.
Miami, Florida 33178   0 3 0 2 9 5

FOR

⑆0660⑆11444⑆   030040744⑈   0114   ⑈0010000000⑈

---



EDIE ROLANDO PINTO

0115

83-1144/660
BRANCH 3

27 Feb. 19 95

PAY TO THE
ORDER OF   Banco del Cafe   $ 500,000.⁰⁰

Quinientos mil ⁰⁰/100 —

DOLLARS

HAMILTON
BANK N.A.
Miami, Florida 33178   0 3 9 5

FOR

⑆0660⑆114⑆   030040744⑈   0115   ⑈0050000000⑈

---



EDIE ROLANDO PINTO

0116

83-1144/660
BRANCH 3

27 Feb. 19 95

PAY TO THE
ORDER OF   Banco del Mar-piente —   $ 100,000.⁰⁰

Cien mil ⁰⁰/100 —

DOLLARS

HAMILTON
BANK N.A.
Miami, Florida 33178

FOR

⑆0660⑆1444⑆   030040744⑈   0116   ⑈0010000000⑈







83

**Check 0128**

EDIE ROLANDO PINTO
63-1144/660
BRANCH 3

03-06, 95

PAY TO THE ORDER OF Bco. Del Kor-Oriente S.A.    $150,000.00

Ciento Cincuenta Mil Exactos    DOLLARS

HAMILTON
BANK N.A.
Miami, Florida 33178

FOR

⑈0660 11444⑈ ⑈300 40 746⑈ 0128 ⑈0015000000⑈

---

**Check 0129**

EDIE ROLANDO PINTO
63-1144/660
BRANCH 3

07 DE MARZO, 19 95

PAY TO THE ORDER OF BANCO DEL CAFE S.A.    $300,000.00

TRESCIENTOS MIL EXACTOS.    DOLLARS

HAMILTON
BANK N.A.
Miami, Florida 33178

FOR 0 3 1 0 9 5

⑈0660 11444⑈ ⑈300 40 746⑈ 0129 ⑈0030000000⑈

---

**Check 0127**

EDIE ROLANDO PINTO
63-1144/660
BRANCH 3

Enero 6-3, 95

PAY TO THE ORDER OF Catedra esta cartillas de 03 $300,000

Trecientos mil.    DOLLARS

HAMILTON
BANK N.A.
Miami, Florida 33178

FOR 0 3 1 3 9 5

⑈0660 11444⑈ ⑈300 40 746⑈ 0127 ⑈0030000000⑈

---

**Check 0136**

EDIE ROLANDO PINTO
63-1144/660
BRANCH 3

0 3 1 5 MARCH 10, 95

PAY TO THE ORDER OF Bco Del Kor-Oriente S.A.    $250,000.00

Doscientos Cincuenta Mil Exactos    DOLLARS

HAMILTON
BANK N.A.
Miami, Florida 33178

FOR

⑈0660 11444⑈ ⑈300 40 746⑈ 0136 ⑈0025000000⑈



8 4

0130
EDIE ROLANDO PINTO
63-1144/660
BRANCH 3
PAID
MILTON BANK
8 marzo 19 95
PAY TO THE ORDER OF _____ Banco del Noi-iente S. a — | $ 100,000.²²
_____ Cien mil ⁰⁰/100 _____ DOLLARS
HAMILTON BANK N.A. Miami, Florida 33178
0 3 1 3 9 5
03-13-95
⑈:0660 11444⑈: 0300407⑈⑈⑈ 0130 ⑈⑈00 10000000⑈⑈

0131
EDIE ROLANDO PINTO
63-1144/660
BRANCH 3
8 marzo 19 95
PAY TO THE ORDER OF _____ Banco del Cafe _____ | $ 200,000.⁰⁰
_____ Doc Cien mil ⁰⁰/100 _____ DOLLARS
HAMILTON BANK N.A. Miami, Florida 33178
03-14-93
⑈:0660 11643⑈: 0300407⑈⑈⑈ 0131 ⑈⑈0020000000⑈⑈

0132
EDIE ROLANDO PINTO
☐ NSF   ☐ ACC. CLOSED
☐ ENDORSEMENT MISSING
☐ SIGNATURE/DO NOT AGREE
☐ TWO SIGNATURES REQUIRED
☐ SIGNATURE MISSING
☐ ENDORSEMENT NOT AS DRAWN
☐ STOP PAYMENT.
☐ REFER TO MAKER
☒ OTHER - The Balance
63-1144/660
BRANCH 3
PAY TO THE ORDER OF _____ | $ 100,000.00
_____ DOLLARS
HAMILTON BANK N.A. Miami, Florida 33178
03-53-93
⑈:0660 11444⑈: 0300407⑈⑈⑈ 0132 ⑈⑈00 10000000⑈⑈

0133
EDIE ROLANDO PINTO
63-1144/660
BRANCH 3
Guat 8-3 19 70
PAY TO THE ORDER OF _____ Catalina de Por titbog _____ | $ 50,000.⁰⁰
_____ Cincuenta mil. — _____ DOLLARS
HAMILTON BANK N.A. Miami, Florida 33178
03-14-93
⑈:0660 1444⑈: 0300407⑈⑈⑈ 0133 ⑈⑈0005000000⑈⑈





86





EDIE ROLANDO PINTO

0147

83-1144/660
BRANCH 3

0 3 2 1 9 5

16 DE MARZO 19 95

PAY TO THE
ORDER OF BANCO DEL CAFE. 930 0205 1025 05 03 $2500 020.00

QUINIENTOS MIL VEINTE EXACTOS.

DOLLARS

HAMILTON BANK
Miami, Florida 33178

FOR



VICTOR LUBECK RIVAS FAJARDO
ABOGADO Y NOTARIO



*89*

HAMILTON
BANK N.A.

**DEBIT MEMO**

Date 3/2?/?S

Amount

We have charged your account as indicated below. Please deduct the total amount from your records.

For:
Closing of Acct. CC#+021415, Payable
TO: Edie Rolando Pinto
0 3 2 7 9 5

Form # H-38

To: Edie Rolando Pinto

Account Number

Total 25.179.62

Prepared by

Branch/Dept.
Bickell

Approved by
M M

1:0660 1444: 0300407441" 151 "000251796 2:"





