# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 00-3397-CIV-HIGHSMITH
### MAGISTRATE JUDGE GARBER

EDIE ROLANDO PINTO LEMUS,                )
                                         )
       Plaintiff,                  )
                                         )
v.                                       )
                                         )
HAMILTON BANK, N.A., a National          )
Banking Association,                     )
                                         )
       Defendant.                  )
_____  )

## DEFENDANT HAMILTON BANK'S RENEWED MOTION
## TO DISMISS FOR *FORUM NON CONVENIENS* AND RENEWED MOTION
## FOR PROTECTIVE ORDER AND SUPPORTING MEMORANDUM OF LAW

Defendant Hamilton Bank, N.A. ("Hamilton Bank") hereby renews its motion to dismiss for *forum non conveniens* based upon new information flatly contradicting Plaintiff Edie Rolando Pinto Lemus' ("Pinto") claim that he is freely able to leave Guatemala and is therefore able to prosecute an action here in the United States. This new evidence, an order from a Guatemalan court reaffirming that Pinto is under house arrest in Guatemala, also raises troubling questions regarding Pinto's veracity in his court filings and his failure to notify the Court of this new information. As such, the Court should revisit the issue of whether Guatemala is a superior forum for the issues raised in the Amended Complaint.

Hamilton Bank also renews its Motion for Protective Order (D.E. #42), requesting that the Court stay all discovery until this dispositive issue is fully and completely resolved.[1]  The grounds supporting these motions are set forth below.

## FACTUAL AND PROCEDURAL BACKGROUND

Pinto, a Guatemalan citizen and resident, filed this lawsuit against Hamilton Bank alleging various causes of action arising out of events occurring exclusively in Guatemala. Specifically, for years, Pinto was a "coffee middleman" who purchased coffee from growers in Guatemala for resale to coffee exporters. *See* Am. Cmpl. (D.E. #12) at ¶¶ 12-14.  During the coffee crop year 1994-1995, the advance payments made to Pinto by the coffee exporters did not reach many of the growers from whom he bought coffee. *Id.* at ¶¶ 37,42,52-55. Thus began an economic crisis among the coffee growers in Esquipulas, Guatemala and a series of lawsuits in Guatemala by and against Pinto concerning the whereabouts of the missing funds.[2]

Five years after the misappropriation of these funds, Pinto filed this lawsuit and alleged for the first time that Hamilton Bank was somehow involved in the misappropriation.  Pinto alleges that he was approached *in Guatemala* by two individuals who claimed to be members of the board of directors of Hamilton Bank, Ernesto Urcuyo Abarca ("Urcuyo") and Gerardo Berger

---

[1] Hamilton Bank incorporates herein by reference its previously filed Motion for Protective Order and all supporting memoranda.

[2] These lawsuits include: (1) a civil action by a coffee exporter, Agricafe S.A. ("Agricafe"), and its parent company, AGIC, against Pinto and others in the Second Civil Court of First Instance in Guatemala City, Guatemala to ascertain the whereabouts of the funds they financed which should have been used to pay the coffee growers; (2) a civil action filed by Pinto in the Second Civil Court of First Instance in Guatemala City against certain individuals, alleging misappropriation of the funds that Agricafe advanced as payment; a criminal action in the Twelfth Criminal Court of the Department of Guatemala by Ernesto Urcuyo Abarca and Gerardo Berger Villacorta against Pinto for calumny, defamation, and libel; and (4) a criminal action in Guatemala by Pinto against Urcuyo and Berger for forgery of private documents, appropriation and misappropriation.  Relevant records from these court proceedings, with certified translations, have previously been filed with this Court. *See* D.E. #20.

GREENBERG TRAURIG, P.A.
1221 Brickell Avenue Miami, FL 33131
305 579 0500 Fax 305 579 0717 www.gtlaw.com
MIAMI NEW YORK WASHINGTON, D.C. ATLANTA PHILADELPHIA TYSONS CORNER CHICAGO BOSTON PHOENIX WILMINGTON LOS ANGELES DENVER
SAO PAULO FORT LAUDERDALE BOCA RATON WEST PALM BEACH ORLANDO TALLAHASSEE

CASE NO. 00-3397-CIV-HIGHSMITH
MAGISTRATE JUDGE GARBER

Villacorta ("Berger") and who persuaded him to allow them to deposit certain of his funds in his account at Hamilton Bank's Miami branch office. *See* Am. Cmpl. at ¶¶ 38, 40.

Specifically, Pinto admits that he authorized Urcuyo, Berger, and a Dario Chacon ("Chacon") to pick up checks issued to him *in Guatemala* by certain coffee exporters. *Id.* at ¶ 43. According to Pinto, in a key and critical allegation, these individuals "took the checks (56 in total), endorsed the checks by signing them without authorization, and cashed the checks at various banks" *in Guatemala. Id.* at ¶ 44. Thereafter, although some money was deposited into Pinto's Hamilton Bank Miami account, approximately $10 million allegedly never made it into this account. *Id.* at ¶ 50. Pinto claims that Hamilton Bank should have transferred this $10 million into his account.

Although Pinto claims that Hamilton Bank failed to credit his account in Miami with certain funds, it cannot be disputed that all of the underlying -- and critical -- series of events took place exclusively in Guatemala. Hamilton Bank therefore immediately moved to dismiss for *forum non conveniens* because, among other things, all of the operative transactions took place in, many critical non-party witnesses reside in, and the majority of documentary evidence is located in Guatemala. *See generally* Defendant, Hamilton Bank, N.A.'s Memorandum of Law in Support of its Motion to Dismiss for *Forum Non Conveniens* ("Memorandum") (D.E. #18). Furthermore, since the events at issue touched off an economic crisis among Guatemalan coffee growers and since four separate lawsuits arising out of the same set of facts are already venued there, Guatemala has an undeniably superior interest in resolving this dispute.

3

GREENBERG TRAURIG, P.A.
1221 Brickell Avenue Miami, Florida 33131
305 579 0500  Fax 305 579 0717  www.gtlaw.com
Miami  New York  Washington, D.C.  Atlanta  Philadelphia  Tysons Corner  Chicago  Boston  Phoenix  Wilmington  Los Angeles  Denver
São Paulo  Fort Lauderdale  Boca Raton  West Palm Beach  Orlando  Tallahassee

CASE NO. 00-3397-CIV-HIGHSMITH
MAGISTRATE JUDGE GARBER

As one ground in support of its motion to dismiss, Hamilton Bank pointed to the fact that Pinto was under "house arrest" in Guatemala, thus preventing him from being able to travel to properly prosecute this action here in the United States.  *See id.* at 3, 5.  Pinto labeled this argument "exaggerated and misplaced" and evidence of certain alleged Hamilton Bank representatives' "undue influence" in Guatemala.  *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss for *Forum Non Conveniens* ("Opposition Memorandum") (D.E. #27) at 4.  Claiming that the order for house arrest had expired, Pinto stated that he was not prohibited from traveling to the United States to prosecute this claim.  *See id.; see also* Affidavit of Edie Rolando Pinto Lemus dated December 28, 2000 at ¶ 7 ("I may travel to the United States.  There is no impediment to my leaving Guatemala to prosecute my claim against Hamilton Bank.").

Pinto even submitted an affidavit from one of his Guatemalan attorneys, swearing that:

27.    Pursuant to Article 1 in Congressional Decree 15-71 of the Republic of Guatemala, detention lasts one year as of the date of the order; and that preventative measure requested by Urcuyo and Berger in the criminal case filed against Pinto for the alleged crimes against "honor" *is over one year old.*  Thus, the order for house arrest obtained against Pinto by Hamilton Bank's representatives, Urcuyo and Berger, would not be an impediment to Pinto traveling as often as is necessary to Miami, Florida to pursue his lawsuit against Hamilton Bank.  Accordingly, there is no prohibition for Pinto to travel to Miami, Florida to prosecute his claim against Hamilton Bank; nor, has there been any such prohibition the various times Pinto has traveled to Miami, Florida this past year.  Notwithstanding this clear provision and aspect of Guatemalan law, Pinto has requested from the court an order proving that he has the right to travel to Miami, Florida to continue to prosecute his claim against Hamilton Bank. . . . Such permission is freely given by the Guatemalan courts and the Court presiding over the defamation action has indicated it would do so in this case so that Pinto may prosecute his claim against Hamilton Bank in Miami, Florida.

4

GREENBERG TRAURIG, P.A.
1221 Brickell Avenue   Miami, Florida 33131
305 579 0500   Fax 305 579 0717   www.gtlaw.com
MIAMI  NEW YORK  WASHINGTON, D.C.  ATLANTA  PHILADELPHIA  TYSONS CORNER  CHICAGO  BOSTON  PHOENIX  WILMINGTON  LOS ANGELES  DENVER
SAN DIEGO  FORT LAUDERDALE  BOCA RATON  WEST PALM BEACH  ORLANDO  TALLAHASSEE

28.     In the event Mr. Pinto were to leave the country while there was a preventive measure in force, the sanction that could be imposed is a fine of up to one thousand quetzals (q.1,000.00) equal to one hundred twenty-eight United States dollars and twenty cents ($128.20), at an exchange rate of seven quetzals and eighty cents per one United States dollar.

Affidavit of Luis Renato Pineda at ¶¶ 27-28 (emphasis in original), attached as Exhibit B to

Opposition Memorandum.

Pinto's appearance at oral argument before the Honorable Barry L. Garber seemed to

satisfy the Court that he was no longer under house arrest. *See* Transcript of January 11, 2001

Hearing at 5-6. Even Pinto's counsel observed that:

I think on the house arrest issue. I think Your Honor has put that to rest. The fact is that that order has been expunged or expired by its terms, and that doesn't bar him. I was kind of surprised to see that issue popping up on their graphic that they gave you. I think that should be crossed out. It is just not an issue anymore.

*Id.* at 39-40

On May 2, 2001, Magistrate Judge Garber issued a Report and Recommendation (D.E.

#44) that recommended denial of Hamilton Bank's motion to dismiss, but made no reference to

the "house arrest" issue. In that Report, the Magistrate Judge determined that the private interest

factors (including factors relating to ease of access to relevant evidence) bearing on whether

Guatemala or Florida is the more convenient forum for this dispute were "at or near equipoise."

*See* Report at 8-11. Hamilton Bank filed objections to this Report, which were overruled by this

Court when it approved the Report on June 12, 2001. *See* Order dated June 12, 2001.

It now appears that it was Pinto's confidence in his ability to leave Guatemala that was

"exaggerated and misplaced." Hamilton Bank recently learned that, contrary to his assertions,

Pinto is indeed still under house arrest and unable to legally leave Guatemala to prosecute this

5

CASE NO. 00-3397-CIV-HIGHSMITH
MAGISTRATE JUDGE GARBER

action in the United States. In fact, as a sanction for Pinto's leaving Guatemala to, among other things, attend the oral argument before Magistrate Judge Garber, he is now unable to leave Guatemala without prior permission. On February 15, 2001, the Twelfth Court for Criminal Matters in Guatemala issued a ruling stating that:

> As requested and due to its being recorded on the Certification submitted, issued by the General Migration Administration, that the defendant Edie Rolando Pinto Lemus has gone out of the country, notwithstanding his having the substitutive measure of House Arrest ordered against him, in addition to that measure, the prohibition from leaving the country without permission is ordered against him.

*See* Document from Twelfth Court for Criminal Matters, Guatemala, C.A., attached hereto (with a certified translation) as Composite Exhibit A. Despite the fact that this order was issued approximately four months ago, Pinto has not bothered to so inform the Court.

Because this order from the Guatemalan court constitutes new evidence bearing directly on whether Florida is an appropriate forum in which to resolve Pinto's claims against it, Hamilton Bank is renewing its motion to dismiss for *forum non conveniens*.[3]

## ARGUMENT

It defies logic for a plaintiff to pursue a lawsuit in a forum to which he is unable to freely travel, particularly when he is able to file the same lawsuit in another, more convenient forum. In this case, Pinto is under house arrest in Guatemala, but is still able to file a lawsuit there. In fact, he is currently involved in approximately four lawsuits in the Guatemalan courts. However,

---

[3] On June 22, 2001, Hamilton Bank filed a motion for certification asking the Court to certify its June 12, 2001 Order denying Hamilton Bank's motion to dismiss for *forum non conveniens* for immediate appeal to the Eleventh Circuit Court of Appeals. The motion for certification was filed out of an abundance of caution and seeks alternative relief just in case the Court refuses to consider and/or grant the instant Renewed Motion to Dismiss.

GREENBERG TRAURIG, P.A.
1221 Brickell Avenue, Miami, Florida 33131
305-579-0500  Fax 305-579-0717  www.gtlaw.com
MIAMI  NEW YORK  WASHINGTON, D.C.  ATLANTA  PHILADELPHIA  TYSONS CORNER  CHICAGO  BOSTON  PHOENIX  WILMINGTON  LOS ANGELES  DENVER

CASE NO. 00-3397-CIV-HIGHSMITH
MAGISTRATE JUDGE GARBER

despite the fact that he cannot legally leave that country to pursue litigation in the United States.
Pinto stubbornly insists upon proceeding with this litigation.

Dismissal for *forum non conveniens* is appropriate "where trial in the plaintiff's chosen
forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to
offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*,
454 U.S. 235, 248 (1981). Pinto cannot offer any specific reasons of convenience to support
Florida as his chosen forum; in fact, he has chosen an exceedingly inconvenient forum for all
parties, including the defendant.

**A.    The Private Interest Factors Undeniably Point to Guatemala
        as the Superior Forum for This Lawsuit.**

A court must consider the following private interest factors: (1) relative ease of access to
sources of proof; (2) availability of compulsory process for unwilling witnesses; (3) the cost of
obtaining attendance of foreign witnesses; (4) practical considerations to make the trial easy,
expeditious and inexpensive; (5) enforceability of a judgment if one is obtained; (6) relative
advantages and obstacles to a fair trial; (7) whether plaintiff chose the subject forum merely to
vex, harass or oppress the defendant by inflicting upon him unnecessary expense or trouble. *See
Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

In his Report, Magistrate Judge Garber determined that the majority of private interest
factors in this case were "at or near equipoise." *See* Report at 8-11. However, this new
information surely tips the balance heavily in favor of sending this matter to Guatemala for
resolution. After having assured the Court that he was not under house arrest and was able to

7

CASE NO. 00-3397-CIV-HIGHSMITH
MAGISTRATE JUDGE GARBER

freely travel to the United States. Pinto was again placed under house arrest in February 2001.
*See* Composite Exhibit A.

1.      **Relative Ease of Access to Sources of Proof and Cost of Obtaining
        Attendance of Foreign Witnesses**

The most important source of proof in this case is Pinto himself.  Much of his case turns
upon what his unwritten understanding was with Urcuyo and Berger concerning the deposit of
his funds.  His deposition is therefore critical.  Hamilton Bank will be severely prejudiced by
having to defend this lawsuit in Florida when Pinto is unable to travel here for deposition or for
trial.  Although a plaintiff is generally required to attend his deposition in the forum where the
lawsuit is pending,[4] it would be physically impossible for Pinto to do so in this case because he is
under house arrest in Guatemala.  Therefore, Hamilton Bank would be forced to incur travel and
other expenses to depose Pinto in Guatemala - a deposition that is expected to take several days.
If, for some reason, the deposition had to be continued, Hamilton Bank's attorneys would have to
incur more travel expenses and inconvenience to complete the deposition.

Urcuyo and Berger are also important sources of proof.  Pinto alleges that these
individuals, both of whom are Guatemalan residents, are the key perpetrators of the wrongdoing
alleged in the Amended Complaint.  It was Urcuyo and Berger who approached Pinto *in
Guatemala* to solicit him to open an account with Hamilton Bank.  *See* Am. Cmpl. at ¶ 38.  And,
it was Urcuyo and Berger who made representations to Pinto to induce him to open this account.

---

[4] *See Orrison v. The Balcor Co.*, 132 F.R.D. 202, 203 (N.D. Ill. 1990) ("In the absence of compelling circumstances
or extreme hardship, a plaintiff should appear for a deposition in the forum of his choice even if he is a
nonresident.").

GREENBERG TRAURIG, P.A.
1221 Brickell Avenue · Miami, Florida 33131
305-579-0500 · Fax 305-579-0717 · www.gtlaw.com
MIAMI  NEW YORK  WASHINGTON, D.C.  ATLANTA  PHILADELPHIA  TYSONS CORNER  CHICAGO  BOSTON  PHOENIX  WILMINGTON  LOS ANGELES  DENVER
SAO PAULO  FORT LAUDERDALE  BOCA RATON  WEST PALM BEACH  ORLANDO  TALLAHASSEE

CASE NO. 00-3397-CIV-HIGHSMITH
MAGISTRATE JUDGE GARBER

*Id.* As with Pinto, Hamilton Bank would have to depose these key witnesses, Messrs. Urcuyo and Berger, in Guatemala because they are Guatemalan residents.

Dario Chacon, the individual who picked up the checks on Pinto's behalf from the coffee growers, is yet another critical witness. According to Pinto, Chacon was instructed to "immediately deposit [these checks] into [Pinto's] Hamilton Bank account in Miami, Florida." *Id.* at ¶ 43. Instead, Chacon and/or other individuals "took the checks (56 in total), endorsed the checks by signing them without authorization, and cashed the checks at various banks" *in Guatemala. Id.* at ¶ 44. Because Chacon is a Guatemalan resident, he must be deposed in Guatemala.

Other important witnesses and sources of proof are similarly located only in Guatemala. Remarkably, Pinto claims that the coffee growers are "immaterial to the resolution of this case." *See* Pinto's Response to Hamilton Bank's Objections to Magistrate Judge Garber's May 2, 2001 Report and Recommendation at 7. These coffee growers are the ultimate owners of much, if not all, of the funds at issue. They are undeniably interested in -- and critical witnesses for -- the resolution of this dispute. Hamilton Bank will want information from these witnesses concerning how much money is owed to them by Pinto, what their understanding with Pinto was regarding payment for their coffee, and what Pinto told them were the reasons for non-payment. These individuals, who allegedly have not received payment for coffee that they sold and who are the real victims here, are some of the most material witnesses in this case.

The coffee exporters are also critical witnesses. Pinto is claiming that Hamilton Bank misappropriated approximately $10 million of his funds -- funds that he received from the coffee

9

exporters – and apparently expects that the Court and Hamilton Bank will take his word that he received approximately $20 million from them. Like every plaintiff, Pinto must prove his damages and must prove that he received this money from the coffee exporters. Furthermore, Pinto alleges that Dario Chacon picked up the checks at issue from the coffee exporters. Hamilton Bank will need to depose the relevant coffee exporters in Guatemala to determine what was communicated to them by Chacon, Pinto, and/or others such that they would release these checks to Chacon.[5]

In addition to having to depose all of the above-noted witnesses, Hamilton Bank would need their live testimony at trial. Even if all of these witnesses are willing to travel to Florida for trial, the cost of transporting them and arranging for accommodations is overwhelmingly prohibitive. Hamilton Bank would also not be able to compel those who were unwilling to appear for trial.

Pinto attempts to deflect the Court's attention away from these important witnesses by claiming that some witnesses are located here in the United States. However, the vast majority of these witnesses are current or former bank employees whose testimony at most would involve tracing the funds at issue from the time that they were received by Hamilton Bank. None of these witnesses possess the type of critical information as do the witnesses in Guatemala. At this time, Hamilton Bank does not intend to dispute that certain funds were not deposited into Pinto's

_____

[5] Hamilton Bank will also have to depose numerous corporate representatives of Guatemalan banks, such as Lloyds Bank, Banco del Quetzal, and Banco de Oriente, in order to authenticate key bank records documenting the flow of funds at issue through these Guatemalan banks. Hamilton Bank also previously identified numerous other individuals residing in Guatemala and possessing relevant non-cumulative information. *See* Memorandum at 10-13.

[6] To the extent that Pinto has identified certain current or former Hamilton Bank employees as witnesses, much of their testimony is cumulative.

10

GREENBERG TRAURIG, P.A.
1221 Brickell Avenue, Miami, Florida 33131
305-579-0500  Fax 305-579-0717  www.gtlaw.com
MIAMI NEW YORK WASHINGTON, D.C. ATLANTA PHILADELPHIA TYSONS CORNER CHICAGO BOSTON PHOENIX WILMINGTON LOS ANGELES DENVER
SÃO PAULO FORT LAUDERDALE BOCA RATON WEST PALM BEACH ORLANDO TALLAHASSEE

CASE NO. 00-3397-CIV-HIGHSMITH
MAGISTRATE JUDGE GARBER

account. What is disputed is whether or not Hamilton Bank was required to deposit those funds into Pinto's account. And, as noted above, witnesses bearing on this issue reside primarily in Guatemala.

Pinto should have no trouble documenting the flow of funds at issue. In fact, it appears that much of this work has already been done. *See* Am. Cmpl. at ¶¶ 44-50 (tracing the funds at issue from the moment the checks were picked up by Chacon through their deposit into accounts at Hamilton Bank). A bank's actions when receiving funds and crediting them to a particular account are well-documented and generally not disputed. There should be ample documentary evidence showing the trail of the funds at issue, thus obviating need for live trial testimony. *See Interpane Coatings, Inc. v. Australia and New Zealand Banking Group Ltd.*, 732 F. Supp. 909, 916 (N.D. Ill. 1990) (information needed from certain bank witnesses was "completely documentary in nature and thus [did] not require live testimony").

### 2.    Relative Advantages and Obstacles to a Fair Trial

Hamilton Bank is also unable to require Pinto to appear for any pre-trial evidentiary hearings that are most certain to occur during this already hotly-contested litigation. Additionally, Pinto would not be available for Hamilton Bank to examine in front of a jury at trial. Although a defendant does not have the absolute right to cross-examine a plaintiff in person at trial, in this case, Hamilton Bank would not receive a fair trial if it did not have the opportunity to have Pinto appear in person at trial. Pinto has alleged serious causes of action

11

against Hamilton Bank, including conspiracy, conversion, and civil theft.[7]  Among other things, Pinto charges that certain alleged representatives of Hamilton Bank made several misrepresentations to him, resulting in the loss of approximately $10 million.  Pinto also denies any responsibility for crises among the Guatemalan coffee growers.

Because of the serious nature of the charges against it and the significant amount of damages at issue, Hamilton Bank is entitled to have a jury physically see Pinto (and other witnesses) testify in front of them on direct and cross-examination and evaluate him for truthfulness and candor.  *See Gulf Oil*, 330 U.S. at 511 ("Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants."); *Interpane*, 732 F. Supp. at 916 (stating that live trial testimony "is a must" on claim where witness credibility is critical); *ACLI Int'l Commodity Services, Inc. v. Banque Populaire Suisse*, 652 F. Supp. 1289, 1295-97 (S.D.N.Y. 1987) (inability to guarantee live trial testimony of witnesses with "uniquely first-hand knowledge" of fraud was compelling factor weighing in favor of dismissal for *forum non conveniens*).[8]

---

[7] It is also probable that Hamilton Bank will assert defenses, including, but not limited to, comparative negligence, which also call for critical live trial testimony.

[8] *See also Schertenleib v. Traum*, 589 F.2d 1156, 1165 (2d Cir. 1978) (court notes that inability to bring plaintiff and his alleged co-conspirator -- who were incarcerated in Switzerland -- for live testimony at trial and for cross-examination before a factfinder presented a "significant problem"); *Tronveit v. Den Norske Bank ASA*, 997 F. Supp. 799, 808-09 (S.D. Tex. 1998) (agreeing that live trial testimony of key witnesses is essential so that factfinder can assess witnesses' demeanor); *Fustok v. Banque Populaire Suiss*, 546 F. Supp. 506, 511 (S.D.N.Y. 1982); *Fogel v. Wolfgang*, 48 F.R.D. 286, 291 (S.D.N.Y. 1969) (stating that the defendants may be severely prejudiced if required to present certain crucial testimony concerning misrepresentations by deposition at trial) ("when fraud charges are made, it is desirable that the factfinder have the benefit of demeanor testimony of witnesses . . .").

12

GREENBERG TRAURIG, P.A.
1221 Brickell Avenue Miami, Florida 33131
305-579-0500  Fax 305 579 0717  www.gtlaw.com
MIAMI  NEW YORK  WASHINGTON, D.C.  ATLANTA  PHILADELPHIA  TYSONS CORNER  CHICAGO  BOSTON  PHOENIX  WILMINGTON  LOS ANGELES  DENVER
SAO PAULO  FORT LAUDERDALE  BOCA RATON  WEST PALM BEACH  ORLANDO  TALLAHASSEE

CASE NO. 00-3397-CIV-HIGHSMITH
MAGISTRATE JUDGE GARBER

Under these circumstances, trial depositions of the critical witnesses, including Pinto, simply are not sufficient:

> A deposition – videotaped or otherwise – simply does not simulate the conditions of trial, where the witness must testify in a courtroom, on the witness stand, before a judge and a jury. These inimitable conditions may mean everything when the "opportunity for the factfinder to appraise the credibility of key witnesses [may make the determinable differences] in this case."

*Kultur Int'l Films, Ltd. v. Covent Garden Pioneer, FSP, Ltd.*, 860 F. Supp. 1055, 1067 (S.D. Tex. 1994) (citing *ACLI Int'l*, 652 F. Supp. at 1296). To force Hamilton Bank to proceed under these conditions will result in an unfair trial.

### 3.   Practical Considerations to Make the Trial Easy, Expeditious, and Inexpensive

In this case, there are no practical considerations to make a trial in Florida easy, expeditious, and inexpensive. Rather, forcing Hamilton Bank to defend itself here will make the trial more difficult, more time consuming, and far more expensive than having the trial in Guatemala. As discussed previously, Hamilton Bank would have to fly willing witnesses to Florida, arrange for translators, arrange to have certified translations of several critical documents,[9] and proceed without live testimony from the plaintiff. In *Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 879 (5th Cir. 1987), the Fifth Circuit Court of Appeals commented on this frustrating scenario:

> It is unlikely that the numerous depositions which needed to be taken of Peruvian citizens could be taken without translators. The cost of transporting these

---

[9] It is telling that the vast majority of exhibits attached to the parties' filings in this action and the vast majority of documents relating to the substantive issues raised by the Amended Complaint submitted in support of the parties' filings have had to be accompanied by certified English translations.

13

GREENBERG TRAURIG, P.A.
1221 BRICKELL AVENUE   MIAMI, FLORIDA 33131
305 579 0500   FAX 305 579 0717   www.gtlaw.com
MIAMI  NEW YORK  WASHINGTON, D.C.  ATLANTA  PHILADELPHIA  TYSONS CORNER  CHICAGO  BOSTON  PHOENIX  WILMINGTON  LOS ANGELES  DENVER
SAO PAULO  FORT LAUDERDALE  BOCA RATON  WEST PALM BEACH  ORLANDO  TALLAHASSEE

witnesses to the United States for trial testimony would likewise be prohibitive,
not to mention the additional cost of translators in the United States.

For those witnesses who are unwilling to travel to Florida for trial, Hamilton Bank would be forced to take their depositions in Guatemala for use at trial. It would then incur costs to send its attorneys, court reporter, and corporate representative[10] to Guatemala on probably more than one occasion. It would also incur costs to hire translators and to procure English translations of all exhibits used in Guatemala to show to the jury at trial.

Considering that Pinto is able to file this same lawsuit in Guatemala, where there are several other lawsuits generally arising out of the same set of facts that are pending, it makes sense to dismiss the instant action for *forum non conveniens.*

### 4. Enforceability of a Judgment

A judgment issued by a Guatemalan court is easily enforceable in the United States. *See, e.g., Cardenas v. Solis,* 570 So. 2d 996 (Fla. 3d DCA 1990) (enforcing temporary injunction entered by Guatemalan courts), *rev. denied,* 581 So. 2d 163 (Fla. 1991); *Bolanos v. Gulf Oil Corp.,* 502 F. Supp. 689, 692-93 (W.D. Pa. 1980) (rejecting plaintiff's concerns about lack of enforceability in the United States of a Guatemalan judgment), *aff'd,* 681 F.2d 804 (3d Cir. 1982).

### B. The Public Interest Factors Weigh Compellingly in Favor of Guatemala.

The court must consider the following public interest factors: (1) court congestion and whether jury duty is being imposed upon the people of a community that has no relation to the

---

[10] Hamilton Bank has the right to be present, through a corporate representative, at trial to effectively participate in its defense at trial. *See Manville Sales Corp. v. Paramount Systems, Inc.,* No. 86-4157, 1988 WL 77860, at *1 (E.D. Pa. Jul. 20, 1988). This right includes the right to be present at depositions to be used at trial. *Id.*

14

GREENBERG TRAURIG, P.A.
1221 Brickell Avenue Miami, Florida 33131
305-579-0500   Fax 305-579-0717   www.gtlaw.com
MIAMI NEW YORK WASHINGTON, D.C. ATLANTA PHILADELPHIA TYSONS CORNER CHICAGO BOSTON PHOENIX WILMINGTON LOS ANGELES DENVER
SAO PAULO FORT LAUDERDALE BOCA RATON WEST PALM BEACH ORLANDO TALLAHASSEE

litigation; (2) the desirability of having localized controversies decided at home; and (3) the difficulties attendant to resolving conflicts of law problems and applying foreign law. *See Gulf Oil*, 330 U.S. at 508-09; *Carnival Cruise Lines, Inc. v. Oy Wartsila AB*, 159 B.R. 984, 990 (S.D. Fla. 1993). These factors weigh heavily against Florida as the proper forum.

### 1.     Desirability of Having Localized Controversies Decided at Home

Florida's interest in this litigation is far outweighed by Guatemala's. There are already at least four lawsuits pending in Guatemala arising out of the same events underlying this lawsuit. Specifically, Agricafe, a coffee exporter, has sued Pinto and others concerning the missing funds that should have been paid to the coffee growers. *See* Guatemalan Record No. 1 (D.E. #20). Pinto has sued Urcuyo, Berger, and others for misappropriation of Agricafe's advanced funds. *See* Guatemalan Record No. 2 (D.E. #20). Urcuyo and Berger have sued Pinto in a criminal action for defamation, *see* Guatemalan Record No. 3 (D.E. #20), and Pinto has in turn sued them in a criminal action for forgery of private documents, appropriation and misappropriation. *See* Declaration of Sergio Danilo Castro Basteguieta, filed on or about December 1, 2000 (D.E. #32). Many of the same witnesses and much of the same evidence needed for the Guatemalan lawsuits will be needed for this lawsuit.

If this lawsuit continues in Florida, there is an extremely high probability of conflicting rulings on key factual issues, such as Pinto's understanding with Urcuyo, Berger, and Chacon about the disbursement of the moneys received from Agricafe. It is conceivable that the factfinders in one court could determine that Urcuyo, Berger and Chacon acted at all times with Pinto's knowledge and authorization, while the factfinders in another court could determine

15

CASE NO. 00-3397-CIV-HIGHSMITH
MAGISTRATE JUDGE GARBER

otherwise. Accordingly, the existence of similar pending litigation in Guatemala weighs in favor of dismissing this action. *See Banco Nominees Ltd. v. Iroquois Brands, Ltd.*, 748 F. Supp. 1070, 1078 (D. Del. 1990) (existence of similar pending litigation in England was one factor prompting Delaware court to dismiss action for *forum non conveniens*).

Although Florida has an interest in the conduct of banks located here and although Pinto is claiming that Hamilton Bank failed to credit his account here in Miami with approximately $10 million dollars, in truth that money was misappropriated (if his allegations are true) long before the money reached Hamilton Bank in Miami. According to Pinto's own allegations, that money was misappropriated in Guatemala. Guatemalan authorities certainly have an interest in ensuring that such misappropriations do not occur, and that the perpetrators are punished appropriately. In sum, this is truly a controversy that is local to Guatemala.

## 2.  Difficulties Attendant to Resolving Conflicts of Law Problems and Applying Foreign Law

Pinto has sued Hamilton Bank for conspiracy, conversion, unjust enrichment, money had & received, breach of fiduciary duty, constructive trust, breach of contract, negligent retention and supervision, and civil theft. Many, if not all, of these causes of action will be governed by Guatemalan law. Florida applies the "significant relationship test" to determine which law governs tort claims. *See Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980).[13] Under this test, Guatemalan law definitely governs Pinto's tort claims because, as

---

[13] The significant relationships test is described as follows:
s 145. The General Principle

GREENBERG TRAURIG, P.A.
1221 BRICKELL AVENUE   MIAMI, FLORIDA 33131
305-579-0500   FAX 305-579-0717   www.gtlaw.com
MIAMI   NEW YORK   WASHINGTON, D.C.   ATLANTA   PHILADELPHIA   TYSONS CORNER   CHICAGO   BOSTON   PHOENIX   WASHINGTON   LOS ANGELES   DENVER
SÃO PAULO   FORT LAUDERDALE   BOCA RATON   WEST PALM BEACH   ORLANDO   TALLAHASSEE

CASE NO. 00-3397-CIV-HIGHSMITH
MAGISTRATE JUDGE GARBER

discussed above, all of the operative conduct and significant events upon which his tort claims

are based occurred in Guatemala. Guatemalan law would also govern Pinto's contractual claims

which turn on his alleged oral agreement in Guatemala with Urcuyo, Berger and others to pick

up the checks in Guatemala and immediately deposit them into his bank account. *See Shaps v.*

*Provident Life & Accident Ins. Co.*, 244 F.3d 876, 881 (11th Cir. 2001) (Florida's conflict of law

rules direct that, in absence of provision to the contrary, a contract is governed by law of state

where contract is made).

The United States Supreme Court has admonished district courts to refrain from

conducting "exercises in comparative law:"

> The doctrine of forum non conveniens . . . is designed in part to help courts avoid
> conducting complex exercises in comparative law. . . . *the public interest factors*
> *point toward dismissal where the court would be required to "untangle problems*
> *in conflict of law and in law foreign to itself."*

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 251 (1981) (citation omitted) (emphasis added). As

Hamilton Bank argued in its initial motion to dismiss, Guatemalan law governs the major issues

in this lawsuit, including whether any alleged statements made to Pinto by Urcuyo, Berger, and

others are attributable to Hamilton Bank, whether the checks picked up by Chacon were properly

---

(1)     The rights and liabilities of parties with respect to an issue in tort are determined by the local law of the
state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under
the principles stated in s. 6.
(2)     Contacts to be taken into account in applying the principles of s. 6 to determine the law applicable to an
issue include:
          (a)     the place where the injury occurred,
          (b)     the place where the conduce causing the injury occurred,
          (c)     the domicil, residence, nationality, place of incorporation and place of business of the parties, and
          (d)     the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
Restatement (Second) of Conflict of Laws § 145.

17

endorsed and negotiated in Guatemala, whether the funds at issue at the time that they were deposited into Hamilton Bank clearly and unmistakably belonged to Pinto, and whether certain individuals breached a contract with Pinto. In short, this is exactly the type of "exercise in comparative law" that the Court should studiously avoid. *See, e.g., Sibaja v. Dow Chemical Co.*, 757 F.2d 1215, 1217 n. 5 (11th Cir.) (factors militating in favor of *forum non conveniens* dismissal included fact that court would have to consider unfamiliar foreign law, written in a foreign language), *cert. denied*, 474 U.S. 948 (1985); *Trujillo v. Banco Central Del Ecuador*, 35 F. Supp. 2d 908, 911-12 (S.D. Fla. 1998) (public interest factors weighed in favor of dismissal, including fact that court would have to rule on matters of foreign law in a foreign language).

## C.    Guatemala is an Adequate, Alternative Forum for this Dispute.

The question of suitability of the alternative forum "is not a high hurdle." *Carnival Cruise Lines*, 159 B.R. at 991. "Ordinarily, this requirement will be satisfied when the defendant 'is amenable to process' in the other jurisdiction." *Trujillo*, 35 F. Supp. 2d at 915. Hamilton Bank has already indicated its willingness to accept process in Guatemala.[12]

Guatemala has previously been found to be an adequate, alternative forum. *See, e.g., Polanco, supra* (Guatemala was adequate alternate forum for claims by parent of youth who died from voluntary glue sniffing); *Banco Metropolitano, S.A. v. Desarrollo de Autopiasts y Carretas de Guatemala Sociedad Anonima*, 616 F. Supp. 301 (S.D.N.Y. 1985) (finding that witnesses,

---

[12] If the Guatemalan courts ultimately decide that they have no jurisdiction over Hamilton Bank, even if Hamilton Bank consents to such jurisdiction, this lawsuit may be refiled. *See Delgado v. Shell Oil Co.*, 890 F. Supp. 1324, 1375 (S.D. Tex. 1995) (court directed that if a foreign country's highest court affirms a dismissal based upon jurisdictional grounds, the plaintiff may return to a United States court), *aff'd*, 231 F.3d 165 (5th Cir. 2000); *Polanco v. H.B. Fuller Co.*, 941 F. Supp. 1512, 1525 (D. Minn. 1996) (citing *Delgado v. Shell Oil* with approval).

GREENBERG TRAURIG, P.A.
1221 BRICKELL AVENUE MIAMI FLORIDA 33131
305 579 0500   FAX 305 579 0717   www.gtlaw.com
MIAMI  NEW YORK  WASHINGTON, D.C.  ATLANTA  PHILADELPHIA  TYSONS CORNER  CHICAGO  BOSTON  PHOENIX  WILMINGTON  LOS ANGELES  DENVER
SAO PAULO  FORT LAUDERDALE  BOCA RATON  WEST PALM BEACH  ORLANDO  TALLAHASSEE

documents and evidence were not located in New York. and parties were all Guatemalan entities); *Bolanos v. Gulf Oil Corp., supra* (dismissing claims for malicious prosecution for embezzlement on *forum non conveniens* grounds and finding Guatemala to be an adequate alternate forum); *Delgado, supra* (dismissing case on *forum non conveniens* grounds and finding Guatemala to be an adequate alternate forum for claims arising from chemical exposure); *Acapolon Corp. v. Ralston Purina Co. and Purina de Guatemala, S.A.*, 827 S.W. 2d 189 (Mo. 1992) (Guatemala was adequate alternate forum for claims arising out of allegedly defective shrimp feed).

## CONCLUSION

Magistrate Judge Garber noted that the private and public interest factors at issue were "at or near equipoise." This latest information concerning Pinto's inability to leave Guatemala surely tips the scales heavily in favor of Guatemala as the superior forum. Accordingly, this Court should dismiss this lawsuit for *forum non conveniens*. It should also grant a protective order staying all discovery until the *forum non conveniens* issue is fully and completely resolved.

DATED this ___ day of June. 2001.

GREENBERG TRAURIG, P.A.
1221 BRICKELL AVENUE MIAMI, FLORIDA 33131
305-579-0500  FAX 305-579-0717  www.gtlaw.com
MIAMI  NEW YORK  WASHINGTON, D.C.  ATLANTA  PHILADELPHIA  TYSONS CORNER  CHICAGO  BOSTON  PHOENIX  WILMINGTON  LOS ANGELES  DENVER
SÃO PAULO  FORT LAUDERDALE  BOCA RATON  WEST PALM BEACH  ORLANDO  TALLAHASSEE

CASE NO. 00-3397-CIV-HIGHSMITH
MAGISTRATE JUDGE GARBER

Respectfully submitted,

Greenberg Traurig, P.A.
Attorneys for Defendant
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

_____
Pedro J. Martinez-Fraga
Florida Bar No. 752282
martinep@gtlaw.com
Angelika Hunnefeld
Florida Bar No. 70246
hunnefelda@gtlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 7th day of June, 2001, a true copy of the foregoing was delivered by U.S. mail to Michael Diaz, Jr., Attorney for Plaintiff, Law Offices of Michael Diaz, Jr., 100 Southeast 2nd Street, Bank of America Tower, Suite 3400, Miami, Florida 33131; Eric W. Bloom, Esq., Attorney for Plaintiff, Winston & Strawn, 1400 L Street, N.W., Washington, D.C. 20005-3502; Justin C. Fineberg, Esq., Attorney for Plaintiff, Homer, Bonner & Delgado, P.A., 100 S.E. 2nd Street, Suite 3400, Miami, Florida 33131; and J. Reid Bingham, Esq., Co-Counsel for Defendant, Hamilton Bank, N.A., 3750 N.W. 87th Avenue, Miami, Florida 33178.

_____
Pedro J. Martinez-Fraga

MIA-SRV01\FONGYEFM\606971v01\D0CB0P.DOC\6/5/01

20

GREENBERG TRAURIG, P.A.
1221 BRICKELL AVENUE MIAMI, FLORIDA 33131
305-579-0500 FAX 305-579-0717 www.gtlaw.com
MIAMI  NEW YORK  WASHINGTON, D.C.  ATLANTA  PHILADELPHIA  TYSONS CORNER  CHICAGO  BOSTON  PHOENIX  WILMINGTON  LOS ANGELES  DENVER
SAO PAULO  FORT LAUDERDALE  BOCA RATON  WEST PALM BEACH  ORLANDO  TALLAHASSEE

SERGIO DANILO CASTRO BASTEGUIETA
ATTORNEY-AT-LAW AND NOTARY


Public Instrument No.


Date


Executing Parties


1st Certified Copy.  Date.


6th Avenue 0-60, Zone 4, Professional Tower I, Suite 711, Telephones:  3351688,
3352222, 3351765, 3351625, 3352584 – Fax:  3351911.  Guatemala.



[coat of arms]

THE MINISTRY OF FOREIGN RELATIONS

of the Republic of Guatemala, C.A.

CERTIFIES:  The authenticity of the signature of Mrs.

TERESA VASQUEZ DE GONZALEZ

Who on the date that it was affixed held the position of:
DEPUTY DIRECTOR OF THE GENERAL ARCHIVE OF PROTOCOLS.

It is stated for the record that the Ministry of Foreign Relations **does not assume any responsibility whatsoever either for the content or for the legal effectiveness of this** document. and the present legalization is limited to acknowledging the authenticity of the signature of the referenced official.

Guatemala, MAY 28, 2001

[illegible signature]
Angela (illegible)Yol
Authentications Chief
MINISTRY OF FOREIGN RELATIONS

[One documentary stamp of the Republic of Guatemala and several rubber seals of the Ministry of Foreign Relations' Authentications Office are affixed hereto.]



026563

In Guatemala City, on the twenty-fifth of May two thousand one, at nine thirty a.m., I, SERGIO DANILO CASTRO BASTEGUIETA, a Notary, being at my professional law offices located at Sixth Avenue number zero dash sixty in zone four, Professional Tower II Building, suite seven hundred eleven in this city, am enlisted by OSCAR RENE ESTRADA CHEW, ESQ., who states to me that he is forty-eight years old, married, an attorney and notary, a Guatemalan national and domiciled hereat, who states that he holds identification card order number Q dash eighteen and registration twenty-five thousand thirty-three, issued in the Municipality of Puerto Barrios, Department of Izabal, to state for the record the following facts and circumstances: ONE: The appearing party puts before me twelve (12) pages of special photocopy paper, printed on legal-sized paper, in order for me to certify them, which are AUTHENTIC given that they have been made from copies identified thus:  a.) Photocopy of the brief submitted before the Twelfth Court for Criminal Matters in and for the Department of Guatemala in the Case identified under Number sixty dash ninety-nine (60-99), under the charge of the Third (3rd) Clerk, dated the eighth of February two thousand one and bearing a receipt stamp from the Court dated the thirteenth of February two thousand one; b.) Photocopy of the brief submitted before the Twelfth Court for Criminal Matters in and for the Department of Guatemala, in the Case identified under Number

[illegible signature]            [illegible signature]
                                 SERGIO DANILO CASTRO BASTEGUIETA
                                 ATTORNEY-AT-LAW AND NOTARY

[Several documentary stamps and a notary's rubber stamp are affixed hereto in the left margin.]



sixty dash ninety-nine (60-99), under the charge of the Third (3rd) Clerk, dated the fourteenth of February two thousand one and bearing a receipt stamp from the Court dated the fourteenth of February two thousand one; c.) also annexed are two photocopies of the copies of the notice issued on the fifth of April two thousand one, issued by the Twelfth Court for Criminal Matters in and for the Department of Guatemala in the Case identified under Number sixty dash ninety-nine (60-99), under the charge of the Third (3rd) Clerk, one in the name of claimant Gerardo Berger Villacorta and the other in the name of claimant Ernesto Urcuyo Abarca, which notice includes a photocopy of the ruling dated the fifteenth of February two thousand one handed down by the Twelfth Court for Criminal Matters in and for the Department of Guatemala in the Case identified under Number sixty dash ninety-nine (60-99), under the charge of the Third (3rd) Clerk, and a photocopy of the brief submitted before the Twelfth Court for Criminal Matters in and for the Department of Guatemala in the Case identified under Number sixty dash ninety-nine (60-99), under the charge of the Third (3rd) Clerk, dated the fourteenth of February two thousand one, the notice includes the Certification issued on the second of February two thousand one by the Deputy Administrative Director of Migratory Control of the General Migration Administration.  All of the photocopies being certified are of copies that



appear in the file already identified that is kept in the professional law offices of Attorney Sergio Danilo Castro Basteguieta. TWO:  There being nothing further to state for the record, I conclude the present instrument at the same place and date as it was started, it being ten o'clock in the morning, which instrument is read in full by the party enlisting me, who accepts, ratifies and signs it with the undersigned Notary. WHERETO I ATTEST.

s) [illegible signature]


BY ME AND BEFORE ME:

[illegible signature]
SERGIO DANILO CASTRO BASTEGUIETA
ATTORNEY-AT-LAW AND NOTARY

[A documentary stamp is affixed in the left margin hereof.]



HONORABLE TWELFTH COURT FOR CRIMINAL MATTERS IN AND FOR THE DEPARTMENT OF GUATEMALA:

Case No. 60-99, 3rd Clerk.

ERNESTO JOSE URCUYO ABARCA AND GERARDO BERGER VILLACORTA, whose particulars are known within the Case identified in the heading to this brief, respectfully appear and

### SET FORTH·

I.  On the twenty-fourth of January two thousand one, we were served notice of the ruling dated the eighteenth of December two thousand, wherein the measure of confinement within the country against EDIE ROLANDO PINTO LEMUS was cancelled.

II.  The notice that was served upon us did not annex the brief submitted by the defendant, whereby he requested that the measure against him be lifted.

III.  Therefore, we personally appeared before the Court and we became aware of the fact that the brief states the following:

"'By virtue of the fact that eventually I will have to make a statement as a victim in a legal proceeding that I am currently pursuing in the city of Miami, state of Florida, United States of America, versus HAMILTON BANK, N.A., and in which Messrs. ERNESTO URCUYO ABARCA, GERARDO BERGER VILLACORTA, [and] DARIO BOANERGES CHACON MORALES are involved, for a fraud in the millions to which I was a victim, I request that I be authorized to be able to travel out of the country.'"

[illegible signature]
SERGIO DANILO CASTRO BASTEGUIETA
ATTORNEY-AT-LAW AND NOTARY

[Several documentary stamps and a notary's rubber stamp are affixed hereto in the left margin.]



IV.  The foregoing brings the defendant's bad faith to the fore, since he takes the Court's good faith by surprise and deceives it, as we will demonstrate with photocopies that we are annexing to the present brief.  Mr. Pinto Lemus traveled out of the country and signed the complaint dated the twelfth of September two thousand.  That is, he has traveled out of the country, violating the Court's order, wherefore he does not deserve to be in the current legal status.

The photocopies being annexed are divided into two parts:

One:  The complaint that he signed in the United States of America, State of Florida (Miami), where the date on which he was out of the country appears.

Two:  A sworn translation into Spanish of said photocopies is being annexed.

V.  Therefore, the measure not only must be ordered against him again, but he must also be given a new measure of financial bond.

VI.  Risk of Flight.  The Law indicates that "IN ORDER TO DECIDE ON THE RISK OF FLIGHT" the following circumstances in particular shall be taken into account: 1) Establishment within the country, determined by the domicile, customary residence, seat of family, business or work and how easy it would be to leave the country definitively or remain in hiding.  2) The sentence that is expected as a result of the proceeding.



3) The amount of the compensatory damages and the attitude that the indicted or accused freely adopts in the face of it ... 5) The defendant's prior conduct. Logic indicates to us that risk of flight exists.

Mr. Pinto Lemus has to reside in the Department of Guatemala, something he does not do. He continuously travels to the interior, to places along the border. Also, his behavior is not appropriate because he VIOLATES THE COURT'S ORDERS and his previous conduct involves many legal problems

VII.  It is furthermore advisable for the Court to request that the General Migration Administration issue a Certification of the migratory movement of Mr. EDIE ROLANDO PINTO LEMUS for double corroboration of what is asserted.

LEGAL GROUNDS:

Article 264 of the Code of Criminal Procedure stipulates:  Substitution: Whenever the risk of flight or of obstruction to the ascertainment of the truth CAN BE REASONABLY PREVENTED by application of another, less serious measure against the defendant, the competent judge or court on duty may impose upon him one or more of the following measures:

1) House arrest at his own domicile or residence or in the custody of another

[illegible signature]
SERGIO DANILO CASTRO BASTEGUIETA
ATTORNEY-AT-LAW AND NOTARY

[Several documentary stamps and a notary's rubber stamp are affixed hereto in the left margin.]



party, without any guard whatsoever or with that provided for by the court...

4) The prohibition from leaving, without permission, the country, the place where he resides or the territorial area set by the court...

7) The posting of an adequate financial bond by the defendant himself or by another person, by means of the deposit of money, securities, the creation of a pledge or mortgage, the attachment or surrendering of goods, or a guarantee from one or more suitable persons.

By virtue of what is set forth hereinabove

WE REQUEST:

1) That the present brief be annexed to his records and documents;

2) That the measure of house arrest be ordered against him, that the measure of financial bond be ordered against him as well as the prohibition from leaving the country, wherefore confinement within the country is indispensable and official notice will need to be given to the General Migration Administration;

3) That it be requested that the General Migration Administration issue Certification of the migratory movement of Mr. EDIE ROLANDO PINTO LEMUS during the year two thousand.

REFERENCE TO LAWS:  Articles:  1, 5, 11, 21, 24, 37, 46, 75, 116, 122, 124, 129, 257, 262, and 264 of the Code of Criminal Procedure.

- We are annexing a Duplicate and three copies of the present brief and of the documents indicated.



HONORABLE TWELFTH COURT FOR CRIMINAL MATTERS IN AND FOR THE DEPARTMENT OF GUATEMALA:

Case No. 60-99, 3rd Clerk.

ERNESTO JOSE URCUYO ABARCA AND GERARDO BERGER VILLACORTA, whose particulars are known within the Case identified in the heading to this brief, respectfully appear and

SET FORTH·

On the thirteenth of February of the present year, we submitted a brief where we made certain requests, because it was corroborated that Mr. EDIE ROLANDO PINTO LEMUS was outside the country on the twenty-second of September two thousand.

With this brief we come to reinforce what was stated in the brief indicated above, since we are annexing the certification issued by the Migratory Control Office of the General Migration Administration, wherein it is corroborated in valid form and FULL PROOF is given that Mr. EDIE ROLANDO PINTO LEMUS has departed the Republic of Guatemala illegally on various occasions, since, as stated, arrivals by air appear, while no departures duly recorded by the General Migration Administration appear.

We have, for example, that in said certification it appears that he entered the country on the twenty-sixth of May two thousand coming from Miami, but said certification does not indicate on what date he departed.

[illegible signature]
SERGIO DANILO CASTRO BASTEGUIETA
ATTORNEY-AT-LAW AND NOTARY

[Several documentary stamps and a notary's rubber stamp are affixed hereto in the left margin.]



It is because of this that it is fitting for the previously requested measures to be ordered against Mr. Edie Rolando Pinto Lemus.

The certification issued by the Undersigned Deputy Administrative Director of Migratory Control of the General Migration Administration is annexed to the present brief in the original.

We will submit the respective complaint before the Government Attorney's Office independently of whether the Court does so officially upon hearing of this criminal unlawfulness.

By virtue of what is set forth hereinabove

WE REQUEST:

1) That the present brief and the aforementioned certification be added to his records;

2) That the measure of house arrest be ordered against him, that the measure of financial bond be ordered against him as well as the prohibition from leaving the country, and that for said purpose official notice be given to the General Migration Administration for the respective confinement within the country,

3) That the Court being aware of this illegality, of this criminal unlawfulness, official notice be given to the Government Attorney's Office in order for it to carry out the pertinent investigation to begin a new criminal proceeding characterizing in due time the offense committed.

REFERENCE TO LAWS: Articles: 1, 5, 11, 21, 24, 27, 28, 35, 37, 46, 48, 69, 75, 84, 107, 116, 122, 124, 129, 157, 257, 262, 264, 297 and 298 of the Code of Criminal Procedure, 414 and 457 of the Criminal Code.



- We are annexing a Duplicate and three copies of the present brief and of the annexed document.

Guatemala, the fourteenth of February two thousand [sic].

UPON REQUEST AND BY COMISSION OF THE PRINCIPALS WHO DO KNOW HOW TO SIGN, BUT CANNOT DO SO AT THIS TIME:

[illegible signature]
    IN THEIR ASSISTANCE:

        [illegible signature]
        SERGIO DANILO CASTRO BASTEGUIETA
        ATTORNEY-AT-LAW AND NOTARY

[Rubber stamp:]   TWELFTH COURT FOR
        CRIMINAL MATTERS
        JUDICIARY  GUATEMALA, C.A.
        RECEIVED
        FEB. 14, 2001
        TODAY AT 2:20 P.M.
        BY [illegible initials]

[One documentary stamp is affixed hereto.]

  [illegible signature]
  SERGIO DANILO CASTRO BASTEGUIETA
   ATTORNEY-AT-LAW AND NOTARY



[Two rubber seals:]
TWELFTH COURT FOR CRIMINAL MATTERS
GUATEMALA, C.A.
CLERK'S OFFICE
JUDICIARY

C-60-99  3rd Clerk.   TWELFTH COURT FOR CRIMINAL MATTERS.

NOTICE

IN GUATEMALA CITY ON THE FIFTH OF APRIL TWO THOUSAND ONE AT
NINE THIRTY-FIVE IN THE MORNING, I SERVED NOTICE UPON THE
COMPLAINANT:  GERARDO BERGER VILLACORTA.
AT:  THE COURTHOUSE.
OF THE CONTENTS OF THE RULING(S) DATED:  THE FIFTEENTH OF
FEBRUARY TWO THOUSAND ONE.
APPEARING ON FOLIO(S):
WHICH REFER(S) TO:  DISMISSED. BE IT OFFICIALLY SERVED.
NOTICE IS BEING SERVED BY MEANS OF THE OFFICIAL DOCUMENT THAT I
DELIVERED TO:  SERGIO DANILO CASTRO BASTEGUIETA. ESQ.
MAKING DELIVERY OF COMLETE COPIES ACCORDING TO LAW AND
SIGNED AS SERVED. WHERETO I ATTEST.


[illegible signature]


[One documentary stamp is affixed hereto.]


[illegible signature]
SERGIO DANILO CASTRO BASTEGUIETA
   ATTORNEY-AT-LAW AND NOTARY



[Two rubber seals:]
TWELFTH COURT FOR CRIMINAL MATTERS
GUATEMALA, C.A.
CLERK'S OFFICE
JUDICIARY

C-60-99  3rd Clerk.   TWELFTH COURT FOR CRIMINAL MATTERS.

NOTICE

IN GUATEMALA CITY ON THE FIFTH OF APRIL TWO THOUSAND ONE AT
NINE THIRTY-FIVE IN THE MORNING, I SERVED NOTICE UPON THE
COMPLAINANT:  ERNESTO URCUYO ABARCA
AT:  THE COURTHOUSE.
OF THE CONTENTS OF THE RULING(S) DATED:  THE FIFTEENTH OF
FEBRUARY TWO THOUSAND ONE.
APPEARING ON FOLIO(S):
WHICH REFER(S) TO:  DISMISSED. BE IT OFFICIALLY SERVED.
NOTICE IS BEING SERVED BY MEANS OF THE OFFICIAL DOCUMENT THAT I
DELIVERED TO:  SERGIO DANILO CASTRO BASTEGUIETA, ESQ.
MAKING DELIVERY OF COMPLETE COPIES ACCORDING TO LAW AND
SIGNED AS SERVED, WHERETO I ATTEST.


[illegible signature]


[One documentary stamp is affixed hereto.]


[illegible signature]
SERGIO DANILO CASTRO BASTEGUIETA
   ATTORNEY-AT-LAW AND NOTARY



[Handwritten:] Complainant
Ernesto Urcuyo Abarca and Gerardo Berger
Villacorta

[Two rubber seals:]
TWELFTH COURT FOR CRIMINAL MATTERS
GUATEMALA, C.A.
CLERK'S OFFICE
JUDICIARY

CASE 60-99      3rd Clerk. TWELFTH COURT FOR CRIMINAL MATTERS: Guatemala, the fifteenth of February two thousand one.

I) Incorporate into the case file the briefs entered under registration numbers one hundred seventy-three and one hundred eighty-four, both for the year two thousand one, along with the annexed documents. II) As requested and due to its being recorded on the Certification submitted, issued by the General Migration Administration, that the defendant Edie Rolando Pinto Lemus has gone out of the country, notwithstanding his having the substitutive measure of House Arrest ordered against him, in addition to that measure, the prohibition from leaving the country without permission is ordered against him. III) It is not fitting to order a measure of financial bond, given that this court considers that the measures being ordered are sufficient to ensure the defendant's presence at the proceeding. IV) May official notice be served upon the General Migration Administration for the respective annotation. V) May the defendant be summoned to [illegible] the respective instrument. VI) Be it served. Articles: 3-5-7-11-11bis-37-38-43-48-160-163-165-264-265-278 of the Code of Criminal Procedure: 141-142-143 of the Judiciary Act.

AURA MARINA GUADRON DIAZ, ESQ.

PRESIDING JUDGE

[A documentary stamp is affixed hereto.]

ROMEO OTTONIEL GALVEZ VARGAS, ESQ.

JUDGE

[illegible signature]
SERGIO DANILO CASTRO BASTEGUIETA

ATTORNEY-AT-LAW AND NOTARY

[Two illegible rubber seals]

HONORABLE TWELFTH COURT FOR CRIMINAL MATTERS IN AND FOR THE DEPARTMENT OF GUATEMALA:

Case No. 60-99, 3rd Clerk.

ERNESTO JOSE URCUYO ABARCA AND GERARDO BERGER VILLACORTA, whose particulars are known within the Case identified in the heading to this brief, respectfully appear and

SET FORTH:

On the thirteenth of February of the present year, we submitted a brief where we made certain requests, because it was corroborated that Mr. EDIE ROLANDO PINTO LEMUS was outside the country on the twenty-second of September two thousand.

With this brief we come to reinforce what was stated in the brief indicated above, since we are annexing the certification issued by the Migratory Control Office of the General Migration Administration, wherein it is corroborated in valid form and FULL PROOF is given that Mr. EDIE ROLANDO PINTO LEMUS has departed the Republic of Guatemala illegally on various occasions, since, as stated, arrivals by air appear, while no departures duly recorded by the General Migration Administration appear.

We have, for example, that in said certification it appears that he entered the country on the twenty-sixth of May two thousand coming from Miami, but said certification does not indicate on what date he departed.

[illegible signature]
SERGIO DANILO CASTRO BASTEGUIETA
ATTORNEY-AT-LAW AND NOTARY

[Several documentary stamps and a notary's rubber stamp are affixed hereto in the left margin.]



It is because of this that it is fitting for the previously requested measures to be ordered against Mr. Edie Rolando Pinto Lemus.

The certification issued by the Undersigned Deputy Administrative Director of Migratory Control of the General Migration Administration is annexed to the present brief in the original.

We will submit the respective complaint before the Government Attorney's Office independently of whether the Court does so officially upon hearing of this criminal unlawfulness.

By virtue of what is set forth hereinabove

WE REQUEST:

1) That the present brief and the aforementioned certification be added to his records;

2) That the measure of house arrest be ordered against him, that the measure of financial bond be ordered against him as well as the prohibition from leaving the country, and that for said purpose official notice be given to the General Migration Administration for the respective confinement within the country;

3) That the Court being aware of this illegality, of this criminal unlawfulness, official notice be given to the Government Attorney's Office in order for it to carry out the pertinent investigation to begin a new criminal proceeding characterizing in due time the violation committed.

REFERENCE TO LAWS: Articles: 1, 5, 11, 21, 24, 27, 28, 35, 37, 46, 48, 69, 75, 84, 107, 116, 122, 124, 129, 157, 257, 262, 264, 297 and 298 of the Code of Criminal Procedure, 414 and 457 of the Criminal Code.



[Two illegible rubber seals]

- We are annexing a Duplicate and three copies of the present brief and of the annexed document.

Guatemala, the fourteenth of February two thousand [sic].

UPON REQUEST AND BY COMISSION OF THE PRINCIPALS WHO DO KNOW HOW TO SIGN, BUT CANNOT DO SO AT THIS TIME:

[illegible signature]
          IN THEIR ASSISTANCE:

                         [illegible signature]
                         SERGIO DANILO CASTRO BASTEGUIETA
                         ATTORNEY-AT-LAW AND NOTARY

[One documentary stamp is affixed hereto.]

          [illegible signature]
          SERGIO DANILO CASTRO BASTEGUIETA
             ATTORNEY-AT-LAW AND NOTARY



[Two illegible rubber seals]

[logo]
MIGRATION
  Guatemala

THE UNDERSIGNED DEPUTY ADMINISTRATIVE DIRECTOR OF MIGRATORY
CONTROL AT THE GENERAL MIGRATION ADMINISTRATION

CERTIFIES

THAT FOR THIS PURPOSE WE HAVE HAD BEFORE US THE REPORT
RENDERED BY THE MIGRATORY CONTROL OFFICE IN OFFICIAL
DOCUMENT NUMBER ONE HUNDRED TWO DATED THE THIRTY-FIRST OF
JANUARY TWO THOUSAND ONE, WHICH IN ITS RELEVANT PART STATES:

PURSUANT TOAN INQUIRY MADE OF THE DATABASE IN OPERATION FOR
SAID PURPOSE AT THE MIGRATORY CONTROL OFFICE, WE WERE ABLE TO
DETERMINE THAT:

EDIE PINTO LEMUS, A GUATEMALAN NATIONAL, ENTERED THE COUNTRY
BY WAY OF THE LA AURORA INTERNATIONAL AIRPORT ON THE TWENTY-
SIXTH OF MAY TWO THOUSAND ON AMERICAN AIRLINES FLIGHT NUMBER
ZERO NINE HUNDRED THIRTY-NINE, DEPARTING FROM MIAMI, COVERED
BY PASSPORT NUMBER TWO MILLION TWO HUNDRED EIGHTY-THREE
THOUSAND SEVENTY-FIVE.

EDDY ROLANDO PINTO LEMUS, A GUATEMALAN NATIONAL, DEPARTED
THE COUNTRY BY WAY OF THE LA AURORA INTERNATIONAL AIRPORT ON
THE FIFTEENTH OF JUNE TWO THOUSAND ON AVIATECA FLIGHT NUMBER
ZERO NINE HUNDRED SIXTY-ONE, DESTINED FOR SAN SALVADOR,
COVERED BY PASSPORT NUMBER TWO MILLION TWO HUNDRED EIGHTY-
EIGHT THOUSAND SEVENTY-FIVE.

[A documentary stamp is affixed hereto.]

[illegible signature]
SERGIO DANILO CASTRO BASTEGUIETA
ATTORNEY-AT-LAW AND NOTARY

[Two illegible rubber seals]

[logo]
MIGRATION
  Guatemala


EDDY PINTO LEMUS, A GUATEMALAN NATIONAL, ENTERED THE COUNTRY BY WAY OF THE LA AURORA INTERNATIONAL AIRPORT ON THE EIGHTEENTH OF JUNE TWO THOUSAND ON AVIATECA FLIGHT NUMBER ZERO NINE HUNDRED FORTY-ONE, DEPARTING FROM MIAMI, COVERED BY PASSPORT NUMBER TWO MILLION TWO HUNDRED EIGHTY-THREE THOUSAND SEVENTY-FIVE.

EDDY ROLANDO PINTO LEMUS, OF GUATEMALAN NATIONALITY, ENTERED THE COUNTRY BY WAY OF THE LA AURORA INTERNATIONAL AIRPORT ON THE FOURTEENTH OF JANUARY TWO THOUSAND ONE ON AVIATECA FLIGHT NUMBER ZERO NINE HUNDRED FORTY-ONE, DEPARTING FROM MIAMI, COVERED BY PASSPORT NUMBER TWO MILLION TWO HUNDRED EIGHTY-EIGHT THOUSAND SEVENTY-FIVE.

MARIA ANTONIA RODRIGUEZ A., CLERK, MIGRATORY CONTROL OFFICE. APPROVED BY MIGUEL ANGEL FIGUEROA ROSALES, DEPUTY DIRECTOR OF MIGRATORY CONTROL.  GENERAL MIGRATION ADMINISTRATION.  THE RESPECTIVE SIGNATURE AND THE SEAL OF THE GENERAL MIGRATION ADMINISTRATION APPEAR.  AND FOR ALL LEGAL PURPOSES AS THE INTERESTED PARTY SEES FIT, THE PRESENT CERTIFICATION IS ISSUED, STAMPED AND SIGNED ON TWO SHEETS OF LETTER-SIZED GENERAL MIGRATION ADMINISTRATION LETTERHEAD.  IN GUATEMALA CITY ON THE SECOND OF FEBRUARY TWO THOUSAND ONE.  LEGAL FEES.  25.00 QUETZALS.  ART. 80 OF GOVERNMENTAL RESOLUTION NUMBER 529-99 AS AMENDED BY RES. 732-99 OF THE CONGRESS OF THE REPUBLIC OF GUATEMALA.

[illegible signature]
Miguel Angel Figueroa Rosales
DEPUTY ADMINISTRATIVE DIRECTOR
MIGRATORY CONTROL OFFICE
GENERAL MIGRATION ADMINISTRATION

[Rubber seal:] GENERAL MIGRATION ADMINISTRATION
MIGRATORY CONTROL OFFICE
GUATEMALA, C.A.

[One documentary stamp]
[illegible signature]
SERGIO DANILO CASTRO BASTEGUIETA
ATTORNEY-AT-LAW AND NOTARY



THE SIGNATURE OF SERGIO DANILO CASTRO BASTEGUIETA, ESQ.
APPEARING AT THE FOOT OF THE REVERSE SIDE OF THE PRESENT SHEET IS
HEREBY AUTHENTICATED.


[Rubber stamp:]
JUDICIARY
[ill.] PROTOCOLS
GUATEMALA,
CENTRAL AMERICA

I AUTHENTICATE the signature of Notary
SERGIO DANILO CASTRO BASTEGUIETA
as it matches that on record.
Guatemala, May 28, 2001

00001818

[illegible initials]
Karin Romero Figueroa
General Archive of Protocols


[illegible signature]
TERESA VASQUEZ DE GONZALEZ, ESQ.
DEPUTY DIRECTOR
GENERAL ARCHIVE OF PROTOCOLS
[illegible initials]
Karin Romero Figueroa
General Archive of Protocols



Guatemala, the eight of February two thousand one.

s)  [illegible signature]

s) [illegible signature]

IN THEIR ASSISTANCE:

[illegible signature]
SERGIO DANILO CASTRO BASTEGUIETA
ATTORNEY-AT-LAW AND NOTARY

[Rubber stamp:]      TWELFTH COURT FOR
CRIMINAL MATTERS
JUDICIARY       GUATEMALA. C.A.
RECEIVED
FEB. 13. 2001
TODAY AT 10:50 A.M.
BY [illegible initials]

[One documentary stamp is affixed hereto.]

[illegible signature]
SERGIO DANILO CASTRO BASTEGUIETA
ATTORNEY-AT-LAW AND NOTARY

